Joshua **PEREZ–GRAHOVAC,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 22A05–0712–CR–703.

Court of Appeals of Indiana.

Oct. 2, 2008.

Rehearing Denied Dec. 11, 2008.

David E. Mosley, Jeffersonville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Joshua Perez–Grahovac brings this interlocutory appeal challenging the trial court's denial of his motion to suppress evidence.

We affirm.

### ISSUE

Whether collateral estoppel precluded the trial court from denying PerezGrahovac's motion to suppress evidence.

### FACTS

On June 3, 2006, Perez–Grahovac was involved in an automobile accident in New Albany, Indiana. He fled from the scene of the accident on foot, entered a nearby home without the owner's permission, and barricaded himself in a second-story room. Officer Craig Pumphrey of the New Albany Police Department reported to the scene of the accident and, thereafter, was able to locate and arrest Perez–Grahovac. Perez–Grahovac told Officer Pumphrey that he was a cocaine dealer and that his wife was dead. When Officer Pumphrey asked about his wife, Perez–Grahovac explained, " 'Me and my wife were getting high and she overdosed on some green pills.' " (Tr. 11). Officer Pumphrey asked where Perez–Grahovac's wife was, and Perez–Grahovac said she was at his home located at 1720 Florence Avenue. After receiving consent from Perez–Grahovac to search the home, police went to 1720 Florence Avenue where they learned Perez–Grahovac's wife was alive and at a nearby hospital receiving treatment for a drug overdose. While being processed at the county jail, officers found .9 grams of cocaine in Perez–Grahovac's sock.

A short time after this incident, the New Albany Police Department received an anonymous tip that there was drug activity at 2213 East Spring Street[1] in New Albany. Officers Kelly Brown and Jeff McKinley went to this address and knocked on the door. Perez–Grahovac answered the door. Officers Brown and McKinley asked if they could search the residence, but Perez–Grahovac did not consent to a search. Perez–Grahovac, though, told the officers that he was a drug user. During this encounter, Officers Brown and McKinley also spoke with Angelia Phillips, who stated she lived at 2213 East Spring Street.

After speaking with Officers Brown and McKinley, Detective Salvatore Zagami

---

**1.** The residence located at 2213 East Spring Street consists of two apartments, apartments A and B. This case only involves apartment

A. Further references to 2213 East Spring Street are specifically to apartment A unless otherwise indicated.

conducted surveillance at 2213 East Spring Street. Over a five day period, Detective Zagami observed, "[p]eople showing up [at the residence] for two or three minutes and leaving." (Tr. 35). He believed that this type of traffic was consistent with narcotics trafficking.

A few days later, Officer Brown conducted a traffic stop on a vehicle driven by Perez–Grahovac. During the course of the traffic stop, Perez–Grahovac again told Officer Brown that he was a drug user.

On June 27, 2006, Detective Zagami noted that trash was being collected in the neighborhood where 2213 East Spring Street was located. He saw a trash container behind 2213 East Spring Street "right at the very edge of the driveway going into the alley." (Tr. 49). Detective Zagami then drove his truck into the alley behind 2213 East Spring Street and parked. Without entering onto the property, he wheeled the trashcan back to his vehicle and unloaded the trash bags into the bed of his truck. Inside two of the trash bags,[2] Detective Zagami found the following: mail addressed to 2213 East Spring Street Apartment A, seven used syringes, one of which contained a substance that field tested positive for cocaine, green vegetation that field tested positive for marijuana, a plastic zip lock bag that contained cocaine residue, and forty-nine plastic bags with the corners twisted and torn off consistent with packaging narcotics for sale.

On June 29, 2006, Detective Zagami applied for a search warrant for 2213 East Spring Street Apartment A. In his probable cause affidavit, Detective Zagami described the premises to be searched and stated:

On June 4, 2006 Officer Pumphrey arrested [Perez–Grahovac]. During the arrest, Mr. Perez–Grahovac told Officer Pumphrey that he was a cocaine dealer. A couple of weeks later, Officer Bell notified Officer Brown of suspected drug activity at 2213 East Spring St. When Officers Brown and McKinley did a stop and knock at that residence, Mr. Perez–Grahovac answered the door. Mr. Perez–Grahovac did not give consent to search, but admitted to Officer Brown that he was a drug addict. Approximately a week later, Officer Brown conducted a traffic stop on [Perez–Grahovac], and Mr. Perez–Grahovac stated once again that he was a drug addict. On June 23, 2006 I received a tip from Detective Troy McDaniel of Floyd County Police. Det. McDaniel had received information that someone was dealing narcotics out of 2213 East Spring Street, and that there were guns in the house. On June 27, 2006 I noticed a New Albany City container sitting in the alley for normal pick up in the rear of the residence at 2213 East Spring St. I retrieved 2 white garbage bags and 2 black garbage bags from the can. I then conducted a search of the refuse and located the following: 49 plastic bags with the corners twisted and torn off (consistent with packaging narcotics for sale), 1 used syringe with a clear fluid left in it (fluid field tested positive for cocaine), 1 small zip lock bag with white residue left in it (residue field tested positive for cocaine), 6 more used syringes, 2 green stems (appear to be marijuana stems), 9 seeds (appear to be marijuana seeds), Miscellaneous [sic] papers addressed to 2213 E. Spring St. Apt. # A, A[sic] "to do" list that includ-

---

**2.** Two trash bags contained trash from 2213 East Spring Street Apartment B. Detective Zagami stated that the trash from apartments A and B was not intermingled and that he discarded the trash bags from apartment B.

ed collecting money from people, and a note listing the good and bad things about someone with the # 1 bad thing being that he is "dealing." I also found a small piece of green vegetation that field tested positive for marijuana.

(App. 10–11) (citation omitted). Floyd County Superior Court Judge Susan Orth reviewed the probable cause affidavit and issued a search warrant to Detective Zagami that same day.

Officers executed the search warrant on June 30, 2006. Both Perez–Grahovac and Phillips were present at the time of the search. In the basement of the residence, officers found a rock of a white granular substance in the drain of the sink, a dish with white powder residue on it, a zip lock bag containing twenty-one grams of a white powder substance, a measuring cup with white powder residue, seven syringes, a partially smoked marijuana cigarette, and a stolen pistol. A box of shells matching the bullets found in the stolen pistol was found in a bedroom Perez–Grahovac and Phillips admitted they shared. In the kitchen, officers found the following: a plastic bag containing five pounds of a white powdery substance that field tested positive for cocaine, a zip lock bag containing .7 grams of a white chunk-like substance, a dish with white residue on it and a razor blade, a metal strainer with white residue on it, and five Zoloft pills in a bottle with the name "Carrie Yates" on it. (App. 16). In Perez–Grahovac and Phillips' bedroom, officers found a syringe with a clear fluid in it that field tested positive for cocaine, sixteen syringes, a partially smoked marijuana cigarette, four Lorazepam pills, two unidentified white and yellow pills, a silver spoon with white powdery residue on it, and a set of digital scales.

During the search, Phillips told officers that she used cocaine and that she and Perez–Grahovac had lived together for five months.

Thereafter, the State filed a six-count information against Perez–Grahovac in the Floyd County Circuit Court. The State charged Perez–Grahovac with dealing in cocaine as a class A felony, possession of a controlled substance as a class D felony, receiving stolen property as a class D felony, maintaining a common nuisance as a class D felony, possession of paraphernalia as a class A misdemeanor, and possession of marijuana as a class A misdemeanor. The State also filed charges against Phillips in the Floyd Superior Court.[3]

On July 26, 2006, Perez–Grahovac filed his motion to suppress evidence arguing that the search of 2213 East Spring Street violated both the United States and Indiana Constitutions. He specifically contended that Detective Zagami's probable cause affidavit did not contain sufficient facts to establish probable cause for a search of the residence. He asserted that his admissions of drug use did not establish probable cause and that the information in Detective Zagami's affidavit was stale. He contended that the trash search was improper and did not establish that 2213 East Spring Street was his residence. The trial court held a hearing on the motion on August 21, 2006 at which Officers Pumphrey, Brown, and McKinley testified along with Detective Zagami. The trial court denied Perez–Grahovac's motion to suppress on August 23, 2006.

On September 21, 2006, Phillips filed a motion to suppress evidence in the Floyd Superior Court. She filed an amended motion to suppress evidence on January 4,

---

**3.** Perez–Grahovac did not provide a copy of the charging information filed against Phil-

lips.

2007. In her amended motion, Phillips alleged that 2213 East Spring Street was her home. She argued that the search of 2213 East Spring Street violated both the United States and Indiana Constitutions because Detective Zagami's probable cause affidavit did not establish probable cause and because the trash search was improper. The chronological case summary ("CCS") in Phillips' case indicates the Floyd Superior Court held a suppression hearing on January 5, 2007.[4] After the hearing, the Superior Court ordered that the State had until January 22, 2007 to file a reply brief to Phillips' motion to suppress and that Phillips had until February 5, 2007 to file response to the State's reply brief. The Superior Court then stated that it would review the briefs and "decide whether to set matter for oral arguments or for ruling[.]" (App. 69). Without conducting any further hearings on the motion to suppress, Judge Orth, who had originally issued the search warrant being challenged, granted Phillips' motion to suppress on February 26, 2007. The CCS states, "Ruling entered on DF's Motion to Suppress Evidence: Granted Counsel notified[.]" *Id.*

On March 27, 2007, Perez–Grahovac filed his Motion to Reconsider Defendant's Motion to Suppress. He noted that the Floyd Superior Court had granted Phillips' motion to suppress and argued that pursuant to *Jennings v. State*, 714 N.E.2d 730 (Ind.Ct.App.1999), *trans. denied,* the trial court was collaterally estopped from denying his motion to suppress. The trial court held a hearing on Perez–Grahovac's motion to reconsider on September 5, 2007.[5] On September 10, 2007, the trial court denied the motion to reconsider noting that it had reviewed *Jennings* and found that case inapplicable here. Perez–Graho-

vac then sought permission from this Court to file an interlocutory appeal, which we granted on January 9, 2008. This appeal ensued.

## DECISION

■ Perez–Grahovac contends that the trial court erred in denying his motion to suppress evidence. He specifically argues that the State was collaterally estopped from contending that the search of 2213 East Spring Street was proper because the Floyd Superior Court had previously determined in Phillips' case that the search was improper and that any evidence seized as a result of the search should be suppressed.

■ "Our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues." *Gooch v. State,* 834 N.E.2d 1052, 1053 (Ind.Ct. App.2005), *trans. denied.* "We determine whether substantial evidence of probative value exists to support the trial court's denial of the motion." *Id.* We will not reweigh the evidence and will only consider the evidence most favorable to the trial court's ruling along with any uncontroverted evidence to the contrary. *Id.* " '[O]nce the State has obtained a magistrate's determination of probable cause, a presumption of validity obtains.' " *Stephenson v. State,* 796 N.E.2d 811, 814 (Ind.Ct.App. 2003) (quoting *Watt v. State,* 412 N.E.2d 90, 95 (Ind.Ct.App.1980)), trans. denied. " 'Where a presumption of the validity of the search warrant exists, the burden is upon the defendant to overturn that presumption.' " *Id.*

■ "A trial court's decision regarding the use of collateral estoppel will be reversed only for an abuse of discretion."

---

4. Perez–Grahovac did not provide a transcript of this hearing.

5. A transcript of this hearing was not provided by Perez–Grahovac.

*Jennings*, 714 N.E.2d at 732. "Generally, collateral estoppel, also known as 'issue preclusion,' operates to bar relitigation of an issue or fact where the issue or fact was adjudicated in a former suit and the same issue or fact is presented in a subsequent suit." *Id.* Collateral estoppel can be used either offensively or defensively depending upon how a party asserts the prior judgment. *Reid v. State*, 719 N.E.2d 451, 455 (Ind.Ct.App.1999), *cert. denied*, 531 U.S. 995, 121 S.Ct. 489, 148 L.Ed.2d 461 (2000). Offensive collateral estoppel characterizes those situations where the plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party. *Id.* Defensive collateral estoppel describes those instances where the defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff previously asserted and lost against another defendant. *Id.*

> Indiana no longer requires that the person taking advantage of the prior adjudication would have also been bound had the prior judgment been decided differently ("mutuality of estoppel") or that the party to be bound by the prior adjudication be the same as or in privity with the party in the prior action ("identity of parties").

*Jennings*, 714 N.E.2d at 732. "[B]ecause a stranger to a prior litigation may now invoke the doctrine, the use is referred to as 'nonmutual collateral estoppel.'" *Reid*, 719 N.E.2d at 455. In this case, Perez–Grahovac sought to invoke the defensive use of nonmutual collateral estoppel to foreclose the State's introduction of evidence that was suppressed by the Floyd Superior Court in Phillips' case.

■■■■■ "The principal consideration with the defensive use of collateral estoppel is whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and whether it would otherwise be unfair under the circumstances to permit the use of collateral estoppel." *Jennings*, 714 N.E.2d at 732. In determining whether collateral estoppel applies in a particular case, we engage in a two-step analysis. *Id.* at 733. First, we must determine what issue or fact was decided by the first judgment. *Id.* Second, we must examine how that determination bears on the subsequent action. *Id.* In performing this analysis, we examine the record of the prior proceeding, including the pleadings, evidence, charges, and other relevant matter to determine whether the fact-finder could have based its decision upon an issue or fact other than that which the defendant seeks to foreclose from consideration. *Id.* "If the fact-finder could have based its decision on another factor, then collateral estoppel does not bar relitigation." *Id.* "The burden is upon the party asserting collateral estoppel to show he is entitled to its use." *Reid*, 719 N.E.2d at 456.

■■■■ Here, Perez–Grahovac has not shown he is entitled to the use of collateral estoppel. The only portions of the record from Phillips' case that Perez–Grahovac provided to the trial court and to this Court are the CCS and Phillips' motion to suppress. The CCS reflects that the Floyd Superior Court granted Phillips' motion to suppress, but because the trial court did not make findings of fact or conclusions of law, this gives us little insight into why the court granted Phillips' motion. The transcript of the January 5, 2007 suppression hearing in Phillips' case could have provided some clues as to why the Floyd Superior Court granted Phillips' motion to suppress, but Perez–Grahovac has failed to provide this. Nor has Perez–Grahovac provided the charging information or any other pleadings or evidence from Phillips' case. Perez–Grahovac has

failed to provide a record from which we can determine what evidence was presented in Phillips' case. Without this, we cannot determine whether in Phillips' case the Floyd Superior Court could have based its decision upon an issue or fact other than that which Perez–Grahovac seeks to foreclose from consideration here. The appellant bears the burden "to present a record that is complete with respect to the issues raised on appeal, and this burden includes a duty to ensure that the court has a transcript of the appropriate trial proceedings." *Id.* at 457. Because Perez–Grahovac has not presented a complete record, he has not shown that the trial court abused its discretion in failing to allow him to invoke the use of collateral estoppel. *Id.* (concluding that appellant did not show that the trial court abused its discretion in failing to allow him to invoke the use of collateral estoppel where appellant did not present a record that was complete with respect to the issues raised on appeal).

Perez–Grahovac argues that the outcome of this case should be controlled by *Jennings.* In that case, Jennings was driving his car in Warrick County. Chad Pryor was a passenger in the vehicle. The police stopped the car, searched the vehicle, and found illegal drugs. The State filed charges against Jennings in the Warrick County Circuit Court and against Pryor in the Warrick County Superior Court. Pryor filed a motion to suppress evidence, which the Warrick Superior Court granted. Jennings then filed a motion to suppress evidence in which he noted that the Warrick Superior Court had granted Pryor's motion to suppress. Jennings argued that because of collateral estoppel, the Warrick Circuit Court should grant his motion to suppress. The Circuit Court disagreed and denied Jennings' motion.

On appeal, we noted certain deficiencies in the record. Specifically, Jennings did not "present us with a transcript of the suppression hearing in Pryor's case, the pleadings filed therein, or the charges filed against Pryor." *Jennings,* 714 N.E.2d at 733. Jennings, though, did present "a certified copy of the chronological case summary from Pryor's case in Warrick Superior Court I, which includes the judge's ruling on Pryor's motion to suppress." *Id.* The Warrick Superior Court's order granting Pryor's motion to suppress contained findings of fact and conclusions of law, which we summarized as follows:

> Warrick Superior Court I found the search of Lehr's purse to be an improper warrantless search which exceeded any necessary safety search for weapons and ordered that any evidence seized as a result of that search would be suppressed at trial. Warrick Superior Court I further found that the searches of Jennings' automobile were improper because they were based upon the evidence seized as a result of the improper search of Lehr's purse. Warrick Superior Court I therefore concluded that any evidence seized in the searches of Jennings' automobile was fruit of the poisonous tree and would also be suppressed at Pryor's trial.

*Id.* We also noted that at Jennings' suppression hearing, the State stipulated "that it had a full and fair opportunity in Pryor's case to litigate the issues regarding the searches and that the searches discussed in Pryor's case are the same searches being discussed in Jennings' case." *Id.* Despite the deficiencies in the record, we concluded that collateral estoppel applied and that the trial court erred in denying Jennings' motion to suppress. *Id.* at 734–35. We, therefore, reversed the trial court's judgment. *Id.* at 735.

*Jennings* is distinguishable. Unlike *Jennings*, the State has not stipulated that it had a full and fair opportunity in Phillips' case to litigate the searches or that the searches in Perez–Grahovac's case and Phillips' case are the same. Additionally, the Floyd Superior Court's order granting Phillips' motion to suppress does not include findings of fact or conclusions of law. It merely states, "Ruling entered on DF's Motion to Suppress Evidence: Granted Counsel notified[.]" (App. 69). Because the Floyd Superior Court's order does not contain findings of fact or conclusions of law and because Perez–Grahovac has not provided a transcript of the January 5, 2007 suppression hearing in Phillips' case or any of the pleadings from Phillips' case, we cannot "determine whether the factfinder could have based its decision upon an issue or fact other than that which the defendant seeks to foreclose from consideration." *Jennings*, 714 N.E.2d at 733. Thus, unlike *Jennings*, Perez–Grahovac has not presented a sufficient record to permit us to determine whether collateral estoppel should apply here.

Perez–Grahovac has not shown that the trial court abused its discretion in denying his motion to suppress. The trial court's order denying Perez–Grahovac's motion to suppress is therefore affirmed.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.