**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT HATCHER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1111-CR-1075 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Reuben B. Hill, Judge
Cause No.  49F18-0107-DF-148061

**July 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

Robert Hatcher[1] appeals the trial court's revocation of his probation, arguing that his waiver of counsel at his probation revocation hearing was not knowing, voluntary, or intelligent.

We reverse and remand.

## ISSUE

Whether Hatcher knowingly, voluntarily, and intelligently waived his right to counsel at his probation revocation hearing.

## FACTS

In November 2001, Hatcher pled guilty to class D felony theft. The trial court sentenced Hatcher to 1095 days, with 300 days executed, 795 days suspended, and 365 days on probation.

In April 2002, the State filed a notice of probation violation, alleging that Hatcher had failed to report to the probation department as directed, failed to comply with court-ordered substance abuse treatment, failed to comply with court-ordered mental health counseling, submitted a urine sample that tested positive for cocaine, and failed to make payments toward financial obligations. The trial court then ordered that a warrant be issued for Hatcher's arrest.

More than nine years later, on October 8, 2011, the trial court held an initial hearing on the State's allegations that Hatcher had violated probation.[2] The

---

[1] According to the record, Hatcher has also gone by the name of Robert Jackson.

[2] Indiana Code section 35–38–2–3(c) provides that the issuance of an arrest warrant tolls the period of probation until a final determination on an alleged probation violation.

chronological case summary ("CCS") indicates that, during this initial hearing, Hatcher was "advised of right to counsel[,]" that his "FILE [was] NOT AVAILABLE[,]" and that a probation revocation hearing was set for the following week. (App. 22). Because the transcript from this hearing has not been included in the record on appeal, we have no information regarding the reason for the nine-year delay nor do we have any details about the trial court's advisement to Hatcher about his right to counsel, other than that he was advised of that right. Furthermore, the CCS entry for that October 8th initial hearing is lacking in specificity and does not show Hatcher's response to the advisement nor does it indicate whether the trial court appointed counsel or whether he waived his right to counsel.

On the other hand, the CCS entry and the transcript from the October 14, 2011 probation revocation hearing do provide some detail into Hatcher's counsel situation and indicate that a public defender was present in the court on the day of the hearing and that, according to the public defender, Hatcher waived his right to counsel and elected to represent himself. Specifically, the CCS entry for that date indicates that "DEF WISHES TO REPRESENT HIMESELF (sic) GRANTED." (App. 23). Additionally, the transcript from that October 14th revocation hearing provides that the following conversation occurred after the trial court called the case:

THE COURT: Robert Hatcher. Mr. Ping?

[PROSECUTOR] MR. PING: Yes Your Honor.

THE COURT: The State going to take any action on this case?

[PROSECUTOR] MR. PING: May I approach?

3

THE COURT:  You may.

[PUBLIC DEFENDER[3]] MS. JOACHIM:  May I approach as well Judge, I . . .

THE COURT:  There is really noting here to look at except that there is an '02 warrant.

[PROSECUTOR] MR. PING:  The case is still open or is it a probation?

THE COURT:  Was it resolved?

[PROSECUTOR] MR. PING:  Well it looks like he was placed on probation.

THE COURT:  Okay.

[PROSECUTOR] MR. PING:  Because there was a probation violation filed in 2002.

THE COURT:  Okay.  On the second page?

[PROSECUTOR] MR. PING:  The second page, the very last . . . probation violation so I would assume that he was convicted and placed on probation.

THE COURT:  In '02.  Okay.  Probation do you have a file on Mr. Hatcher?

[PROBATION OFFICER] MS. SNOWDEN:  I do Your Honor.

THE COURT:  Okay may I see what you have?

[PROBATION OFFICER] MS. SNOWDEN:  Are you looking for a copy of the violation?

THE COURT:  Yes, the violation.

[PROBATION OFFICER] MS. SNOWDEN:  Okay, I have several here.

THE COURT:  Miss Joachim, would you assist Mr. Hatcher?  And Miss Snowden would you outline your allegations?

---

[3] Hatcher's appellate counsel indicates that Ms. Joachim was a public defender, *see* Hatcher's Br. at 2, and the State defers to that indication.  *See* State's Br. at 5 n.2.

[PUBLIC DEFENDER] MS. JOACHIM:  Judge just before we start Mr. Hatcher wishes to go Pro-se.

THE COURT:  He what?

[PUBLIC DEFENDER] MS. JOACHIM:  He wishes to represent himself.

THE COURT:  Very well.

(Tr. 1-2).  Thereafter, the trial court did not question or inquire of Hatcher about his waiver of counsel and desire to represent himself.

Instead, the trial court had the probation officer read the probation violation allegations into the record and then asked, "You wish to be heard Mr. Hatcher?"  (Tr. 2). Hatcher then stated that he "would like to challenge the allegations" and alleged that he had complied with the conditions of probation in another state, specifically in Chicago, Illinois at Northwestern University. (Tr. 3).  Hatcher stated that he "would like to have a hearing and prepare for the matter to answer these allegations that . . . [the] probation officer has said that [he] didn't do nine years ago."  (Tr. 3).  Hatcher also stated, "My probation was only for one year, not nine years and I would like to bring proof and paperwork from my program . . . my program coordinator up in Chicago and she said that I did nine months there in their program."  (Tr. 3).

Thereafter, the following exchange occurred between the trial judge and Hatcher:

THE COURT:  Are you talking to the Court?

MR. HATCHER:  Well I was talking to probation.  I would like to explain this to the Court.  I would like to prepare to explain why . . . why my response to the allegations if I may.  I do have it . . .

THE COURT:  Well you are doing that now.

5

MR. HATCHER:  Well I don't have any information on that.

THE COURT:  Any information on what?

MR. HATCHER:  Well basically I would like to get the records . . . records from my . . . my (unintelligible) Northwestern . . . where I was taking a program that I was supposed to do here.

THE COURT:  Well how do you get around allegation Number 1 that you didn't report to probation?

MR. HATCHER:  Well I did report to probation.  I reported to probation in November, December, January, February and March.  I didn't report in April so these allegations of saying that I didn't . . . didn't report at all . . . that is incorrect.

THE COURT:  It doesn't say that.  It said you didn't report as directed.

MR. HATCHER:  I . . . well I didn't complete . . . this is my first violation of this . . . it's not my second violation or my third violation.  This is my first violation.  I have basically been in . . . I haven't been arrested for anything having . . . haven't been arrested in Marion County.  I haven't had any problems, in any trouble for about nine years . . . well ten years Your Honor.  But . . .

THE COURT:  I don't know that.  I just assume that you haven't been arrested in Marion County because otherwise I would know that.  There would be a report.

MR. HATCHER:  Well Your Honor I would like to have a chance to file a motion to terminate my probation or if it is . . . have it reinstated.  I mean basically on that matter . . . Judge I would like to prepare my briefs or my information so I can do that effectively and correctly.

THE COURT:  Denied.  I find that you violated conditions of your probation in that you did not report when you were required to.

MR. HATCHER:  Well . . .

THE COURT:  Hold on just a minute, hold on just a minute . . . hold on.  Now I have listened to you.  No more talking.  Revoke your probation because you didn't report when you [were] required to.  It is ridiculous for you to say you fulfilled the obligations of this Court at the University of

6

someplace in Illinois or what have you. And I also find that you are competent and (sic) to represent yourself because we have gone through this before.

MR. HATCHER: Yes, ten years ago.

THE COURT: Well revoke your probation and sentence you to serve the backup time in this case.

MR. HATCHER: Well I . . .

THE COURT: Indigent as to fines and costs. Go with the Sheriff.

MR. HATCHER: How long . . . how much time is all that?

THE COURT: 795 days.

MR. HATCHER: 795 days?

THE COURT: Yes.

MR. HATCHER: Well what about my backup time?

THE COURT: Credit for any time that you have served so far on this. Go with the Sheriff.

(Tr. 3-6).

Thus, the trial court determined that Hatcher had violated probation by failing to report to probation, revoked Hatcher's probation, and ordered him to serve his 795-day suspended sentence. Thereafter, Hatcher filed a pro se notice of appeal.[4] Hatcher later requested appellate counsel, and the trial court appointed the public defender to represent him. Hatcher now appeals the revocation of his probation.

---

[4] Hatcher's pro se notice of appeal was initially file stamped with a date that would have made it untimely. However, after a hearing on Hatcher's motion to change the file-stamp date to comply with the prisoner mailbox rule, the trial court granted his motion and ordered that Hatcher's file-stamp be changed to reflect a filing date of November 10, 2011, a date that made it timely filed.

7

The sole argument Hatcher makes on appeal is that he did not knowingly, intelligently, and voluntarily waive his right to counsel during his probation revocation hearing. Specifically, Hatcher contends that the trial court erred by failing to ensure that he knowingly, intelligently, and voluntarily waived his right to counsel and by failing to establish a record showing such a waiver. Hatcher seeks to have his revocation reversed and to have this case remanded for a new probation revocation hearing.

As part of a probation revocation hearing, a defendant is entitled to the right to "representation by counsel." Ind. Code § 35-38-2-3(e) . "The law is well settled that whenever a defendant proceeds without the benefit of counsel, the record must reflect that the right to counsel was voluntarily, knowingly, and intelligently waived." *Bumbalough v. State*, 873 N.E.2d 1099, 1102 (Ind. Ct. App. 2007). In doing so, "the trial court must determine the defendant's competency to represent himself and establish a record of the waiver[,]" and the "record must show that the defendant was made aware of the nature, extent[,] and importance of the right to counsel and to the necessary consequences of waiving such a right." *Id.* (citations and internal quotation marks omitted). We review de novo a trial court's determination that a defendant has waived his right to counsel. *Butler v. State*, 951 N.E.2d 255, 260 (Ind. Ct. App. 2011).

Our supreme court has explained:

Courts determining whether a waiver of counsel for trial was made voluntarily and intelligently must consider (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of

8

the defendant, and (4) the context of the defendant's decision to proceed pro se.

*Hopper v. State*, 957 N.E.2d 613, 618 (Ind. 2011). Indeed, "'[t]here are no magic words a judge must utter to ensure a defendant adequately appreciates the nature of the situation.'" *Butler*, 951 N.E.2d at 259 (quoting *Kubsch v. State*, 866 N.E.2d 726, 736 (Ind. 2007), *reh'g denied*, *cert. denied*). Both our supreme court and the United States Supreme Court "have deliberately eschewed any attempt to formulate a rigid list of required warnings, talismanic language, or formulaic checklist." *Hopper*, 957 N.E.2d at 619 (citations omitted). "Rather, determining if a defendant's waiver was knowing and intelligent depends on the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Eaton v. State*, 894 N.E.2d 213, 218 (Ind. Ct. App. 2008) (citations and internal quotation marks omitted), *trans. denied*. As a reviewing court, we must "conduct a thoughtful examination of the record as a whole to determine whether a particular defendant, in a particular state of a particular case, voluntarily and intelligently waived his right to counsel." *Hopper*, 957 N.E.2d at 619.

Before we proceed any further, we again note that neither party has provided us with the transcript of the initial hearing. We have explained that the lack of a recording from a hearing will not in and of itself lead to a conclusion that a defendant did not knowingly and voluntarily waive his right to counsel, *see State v. Vickers*, 963 N.E.2d 1135, 1139-40 (Ind. Ct. App. 2012), *trans. denied*, and we remind Hatcher that he has the "burden to present a record that is complete with respect to the issues raised on appeal,

9

and this burden includes a duty to ensure that the court has a transcript of the appropriate trial proceedings." *Perez–Grahovac v. State*, 894 N.E.2d 578, 585 (Ind. Ct. App. 2008) (internal quotation marks and citation omitted), *reh'g denied*, *trans. denied.*

Despite the lack of transcript, the parties agree—and the CCS confirms—that the trial court informed Hatcher of his right to counsel during that initial hearing. The record before us, in relation to that initial hearing, does not specifically indicate Hatcher's response or whether the trial court advised Hatcher that he had a right to appointed counsel or any other rights. However, during the probation revocation hearing, the trial court provided Hatcher with the assistance of a public defender, who informed the trial judge that Hatcher wanted to waive his right to counsel and proceed pro se. The trial judge, however, did not question Hatcher regarding this decision and did not make any sort of inquiry into Hatcher's waiver of counsel. Instead, the trial court proceeded to have the probation officer list the allegations of how Hatcher had violated his probation nine years earlier, followed by having Hatcher explain how he would "get around" the allegations. (Tr. 4). Hatcher did not admit to the allegations and indicated that he wanted the opportunity to obtain records and present evidence regarding his compliance with the conditions of his probation. In essence, it seems that Hatcher was trying to request a continuance to prepare for the hearing. The trial court "[d]enied" Hatcher's request, did not have the State present any sworn witnesses or evidence on the probation allegations, and instead, proceeded to determine that Hatcher had violated his probation by failing to report to probation when required. (Tr. 5). The trial court then found that Hatcher was

10

"competent" to represent himself because they had "gone through this before[,]" to which Hatcher responded, "Yes, ten years ago." (Tr. 5).

The State argues that the trial court's advisement to Hatcher regarding his right to counsel made during the initial hearing, coupled with the public defender's statement that Hatcher wanted to represent himself—which the State categorizes as "unequivocal request to proceed pro se"— shows that Hatcher's knowingly and voluntarily waived counsel. State's Br. at 8. We cannot agree.

After "conduct[ing] a thoughtful examination of the record as a whole" regarding Hatcher's waiver of counsel during his probation revocation proceeding, *see Hopper*, 957 N.E.2d at 619, we conclude that the record does not indicate that Hatcher knowingly, voluntarily, and intelligently waived his right to counsel during his probation revocation hearing. Based on the record before us—including the CCS entry for the October 8th initial hearing indicating that the trial court did not have Hatcher's case file plus the conversation at the beginning of the October 14th revocation hearing regarding the uncertainty of the status of Hatcher's case—it appears unlikely that the trial court provided an extensive advisement regarding the various rights that Hatcher had or the potential consequences that he faced in this probation revocation proceeding. Nonetheless, even assuming that the trial court informed Hatcher during the initial hearing of all his attendant rights when informing him of his right to counsel, the record does not indicate that he knowingly, intelligently, and voluntarily waived that right.[5]

---

[5] As explained above, the lack of the transcript from the initial hearing is not the basis for our determination that the record does not show that Hatcher knowingly, intelligently, and voluntarily waived his right to counsel.

11

Although the public defender told the trial court that Hatcher desired to proceed pro se, the trial court conducted absolutely no questioning of Hatcher regarding that desire nor did it establish a record demonstrating that his desire to waive counsel and proceed pro se was knowing, intelligent, and voluntary. Thus, we reverse the trial court's order revoking Hatcher's probation and remand for a new revocation hearing. *See Bumbalough*, 873 N.E.2d at 1102 (reversing probation revocation and remanding for a new revocation hearing where the trial court advised the defendant of his right to counsel but failed to make any record regarding whether the defendant's waiver of his right to counsel was voluntary, knowing, and intelligent); *see also Eaton*, 894 N.E.2d at 216-18 (holding that the defendant did not waive his statutory right to counsel at his probation revocation proceeding because he did not make an unequivocal waiver and was not properly advised of his right to counsel); *Bell v. State*, 695 N.E.2d 997, 999 (Ind. Ct. App. 1998) (reversing probation revocation where the trial court never advised defendant of right to counsel and the record was silent as to whether court determined defendant's waiver was voluntary). *Cf. Butler*, 951 N.E.2d at 261 (holding that the defendant's waiver of counsel was knowing and voluntary where "[t]he record shows that the trial court advised [defendant] of his right to counsel and that [defendant] unequivocally waived that right"); *Cooper v. State*, 900 N.E.2d 64, 70-71 (Ind. Ct. App. 2009) (holding that the defendant's waiver of counsel was knowing and voluntary where the record revealed that the defendant expressed an unequivocal desire to proceed without counsel and the trial court questioned the defendant regarding his background, experience, and conduct).

The State acknowledges that "it may have better behooved the trial court if it had made a more specific inquiry regarding Hatcher's decision" to waive counsel but asserts that the trial court's "omission to do so does not invalidate Hatcher's waiver given the other facts and circumstances of this case." State's Br. at 11. Specifically, the State contends that Hatcher's extensive criminal history and numerous pro se motions filed in 2001 when he pled guilty support a conclusion that Hatcher "knew what he was doing when he requested to represent himself at the probation revocation hearing." State's Br. at 9. We cannot agree.

While the presentence investigation report, which was prepared in 2001 for Hatcher's sentencing after he pled guilty, indicates that Hatcher had numerous convictions and a previous probation revocation in another case, it does not support a conclusion that his waiver of counsel was knowing, intelligent, and voluntary. Additionally, Hatcher's pro se motions filed in 2001 do not support such a conclusion; instead, these pro se motions reveal that Hatcher had mental health issues. Indeed, the record reveals that, as a condition of Hatcher's probation, the trial court ordered him to submit to a psychiatric evaluation.

Based on the record before us, we cannot conclude that Hatcher knowingly, intelligently, and voluntarily waived his right to counsel. Accordingly, we reverse the trial court's order revoking his probation and remand for a new hearing.

Reversed and remanded.

RILEY, J., and NAJAM, J., concur.