## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2020, 9:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Chad A. Montgomery
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shane D. Mendoza, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | November 30, 2020 <br><br> Court of Appeals Case No. 20A-CR-859 <br><br> Appeal from the Warren Circuit Court <br><br> The Honorable Hunter Reece, Judge <br><br> Trial Court Cause No. 86C01-1804-F2-43 |

**Tavitas, Judge.**

# Case Summary

Following convictions by a jury for possession of methamphetamine in excess of ten grams, a Level 4 felony; possession of marijuana in excess of ten grams, a Class B misdemeanor; and maintaining a common nuisance, a Level 6 felony, Shane Mendoza appeals from the denial of his motion to dismiss and motion to suppress evidence. We affirm.

# Issue

The sole issue on appeal is whether the trial court erred in denying Mendoza's motion to dismiss and motion to suppress evidence based on collateral estoppel.

# Facts

On April 2, 2018, Assistant Police Chief Gene Snoeberger ("Assistant Chief Snoeberger") of the Attica Police Department served an order of protection on Mendoza at Mendoza's Fountain County residence. The order of protection prohibited Mendoza's contact with his ex-girlfriend, C.H., who also resided in Fountain County. At approximately 9:45 a.m. on the morning of April 20, 2018, C.H. emerged from a shower to discover that the gun she kept on her nightstand, as well as her gun case and ammunition, were missing. C.H. last recalled seeing the items in the house two days earlier. C.H. was also surprised to see that the back door to her residence was unlocked. C.H. then saw Mendoza, in a black jacket, on her front porch. C.H. called the police.

[4]     Later that morning, Attica Police Department officers learned that Mendoza arrived at his workplace, TMF Inc., at 10 a.m. that day. TMF Inc. is located approximately ten minutes from C.H.'s residence in Warren County. Officers went to Mendoza's workplace and observed Mendoza's 2007 Ford F-150 pickup truck parked outside TMF. From outside the vehicle, Assistant Chief Snoeberger observed a gun trigger lock in the front area and a black jacket and an elephant key chain in the truck bed. The elephant key chain in Mendoza's truck bed also held the picture of a young boy. Assistant Chief Snoeberger contacted C.H., who advised that her daughter's key chain—bearing an elephant and a child's photograph—went missing in the same time frame as the gun, gun case, and ammunition. The officers arrested Mendoza for invasion of privacy; asked him about the location of C.H.'s firearm; and asked permission to search the truck. Mendoza denied knowledge of the missing gun and refused to consent to a search.

[5]     Later the same day, Assistant Chief Snoeberger assisted in the preparation of an application for a search warrant regarding Mendoza's pickup truck, which was still located in Warren County, as well as Mendoza's Fountain County residence. *See* Mendoza's App. Vol. II p. 67 (Assistant Chief Snoeberger's testimony that "we didn't know if [Mendoza] had returned there and placed anything there"). Pursuant to the search warrant application, the police were seeking evidence of theft regarding C.H.'s Glock Model 42 .380 caliber handgun, a gun case, and two boxes of ammunition.

[6] The Fountain Circuit Court approved the search warrant for both Mendoza's residence and vehicle, and Assistant Chief Snoeberger executed the warrant and searched Mendoza's vehicle in Warren County that same day. Deputy Pruett[1] of the Warren County Sheriff's Department executed the warrant as to Mendoza's home in Fountain County. Both searches yielded evidence of illegal drug activity. Most pertinently, the search of Mendoza's pickup truck in Warren County yielded a set of digital scales in the driver's side door as well as a wooden box that held a clear baggie containing thirty grams of marijuana; a clear baggie containing twenty-nine grams of methamphetamine; and two empty plastic baggies. During the search of the truck, Chief Snoeberger removed and searched a manila envelope and an eyeglasses case found in the glove compartment. C.H.'s missing gun, gun case, and ammunition were not found in the truck.

[7] The search of Mendoza's Fountain County residence yielded a baggie of green plant material; a metal pipe with residue; and a grinder. Investigators also seized a 20-gauge shotgun; a .357 revolver in a gun case; a .40 caliber semi-automatic handgun; ammunition; and a storage container for ammunition from Mendoza's residence.

[8] On April 24, 2018, the State charged Mendoza in Warren County in Cause 86C01-1804-F4-43 ("Warren County Cause") with dealing in

---

[1] Deputy Pruett's first name is not listed in the record.

methamphetamine, a Level 2 felony; possession of methamphetamine, a Level 3 felony; and possession of marijuana, a Class B misdemeanor. The Warren County charges stemmed from evidence that was recovered from Mendoza's vehicle pursuant to the execution of the Fountain County search warrant.

[9] On April 26, 2018, the State charged Mendoza in Fountain County under Cause Number 23C01-1804-F6-195 ("Fountain County Cause") with invasion of privacy, a Level 6 felony; unlawful possession of a firearm by a domestic batterer, a Class A misdemeanor; possession of marijuana, a Class B misdemeanor; and possession of paraphernalia, a Class C misdemeanor.

[10] On September 14, 2018, Mendoza filed a motion in the Fountain County Cause to suppress the evidence seized from his house and vehicle. Mendoza's App. Vol. II pp. 48-49. Mendoza argued, in part, that the search of his premises and vehicle exceeded the scope of the search warrant in violation of the Fourth Amendment to the United States Constitution and was unreasonable in violation of Article 1, Section 11 of the Indiana Constitution. Mendoza also argued that the officers should have sought another search warrant before searching the truck for drugs.

[11] The Fountain Circuit Court conducted a suppression hearing on September 24, 2018. At the suppression hearing, Chief Snoeberger testified that seeing the black jacket and the elephant key chain in Mendoza's truck lent credibility to C.H.'s police report. Chief Snoeberger also testified that: (1) he could "probably" have determined by touch that the manila envelope found in the

truck did not contain bullets or a gun, *id*. at 21; (2) the gun, outside its case, might have fit inside the wooden box, along with C.H.'s ammunition; (3) he examined the lining of Mendoza's jacket pocket for the gun and bullets; and (4) once he found the drugs, he expanded his search to look for additional drugs.

[12] On October 28, 2018, the Fountain Circuit Court denied Mendoza's motion to suppress evidence seized from his residence but granted Mendoza's motion to suppress evidence regarding evidence seized from his vehicle. In its order, the Fountain Circuit Court found, in pertinent part, as follows:

> 7. Next, [Mendoza] argues that the officers in executing the search warrant, exceed[ed] the scope of the warrant thereby violating his Fourth Amendment rights. [Snoeberger] testified after securing the search warrant he searched the glove box of the truck, a place he expected the gun, case or ammunition might be kept. While searching he found a manila envelope which without opening he could tell did not have the gun, case or ammunition in it. He opened it anyway at which time he discovered illegal drugs and paraphernalia. Also in the truck he discovered a wooden box with [sic] was too small for the gun [case[2]] but could have contained the ammunition. Upon opening the box, he also discovered either drugs or paraphernalia. Upon discovery of these items, he did not stop the search to request an additional search warrant but rather kept searching for more illegal drugs and paraphernalia and the missing items. None of the items listed in the search warrant were ever recovered in the

---

[2] The trial court subsequently clarified that Assistant Chief Snoeberger actually testified that the wooden box was too small to contain C.H.'s gun *case* and was possibly large enough to hold the missing gun. *See* Tr. Vol II p. 93.

truck. The items found were not inadvertently located but searched for. Nor were they in plain view.

8. At this point, by continuing to look for drugs the officer exceeded the scope of the search warrant. He should have stopped the search and applied for an additional search warrant based on his findings. There is no evidence that the passage of time to secure a second search warrant would have hampered the investigation as to the items missing or the drugs now searched for by the officer in the truck. The continued search violated [Mendoza]'s Fourth Amendment rights.

\* \* \* \* \*

10. Defendant's Motion to Suppress is granted as to the items recovered during the search of the 2007 Ford F150 belonging to the Defendant. Defendant's Motion to Suppress as to the items recovered during the search of [Mendoza's residence] is denied.

Mendoza's App. Vol. II pp. 86-87 (citations omitted). The Fountain Circuit Court denied the Fountain County Prosecutor's subsequent motion to correct error on December 3, 2018.

[13] On December 17, 2018, Mendoza pleaded guilty in the Fountain County Cause, and the trial court entered judgment of conviction. Mendoza pleaded guilty to invasion of privacy and possession of a firearm by a domestic batterer and was sentenced to 545 days executed in the Department of Correction.

[14] On March 15, 2019, Mendoza filed a motion to dismiss all pending Warren County charges. In the alternative, Mendoza moved to suppress the evidence that was seized from his vehicle pursuant to the search warrant. In this motion

to dismiss/suppress, Mendoza argued that, based on the Fountain County trial court's partial grant of his motion to suppress evidence, the Warren County prosecutor was collaterally estopped from arguing that the search of Mendoza's vehicle was proper. On April 16, 2019, the Warren County trial court ("the trial court") conducted a hearing on the motion to dismiss/suppress.

[15] In its ensuing May 8, 2019 order, the trial court denied the motion to dismiss/suppress on the following grounds:

> The Court now finds there was not "a full and fair opportunity to litigate" the suppression issue impacting the Warren County Prosecutor's Office case, because that office did not have fair notice and there is no evidence that the Fountain County Prosecutor or Court were aware[ ] the Warren Circuit Court criminal case was clearly in issue before the Court at the time of the hearing. Additionally, the Warren County Prosecutor was not timely notified of the adverse decision, so it may seek appellate review before expiration thereof, although this factor alone was not dispositive. Under all of the circumstances of this case, it would be unduly prejudicial to the State, i.e. Warren County Prosecutor, to foreclose its opportunity to heard [sic] on the suppression of its evidence and the motion must be denied.

Mendoza's App. Vol. II p. 94. The trial court, thus, concluded that collateral estoppel did not preclude the Warren County prosecutor from challenging Fountain County's ruling on Mendoza's motion to suppress evidence.

[16] On May 14, 2019, Mendoza filed a motion to correct error, wherein he tendered additional evidence to support his contentions that: (1) the Warren County Prosecutor had actual notice of Mendoza's motion to suppress

challenge in Fountain County; (2) the Warren County prosecutor had ample time to intervene or appeal; and (3) the Fountain County Prosecutor was aware that he would be defending the Warren County search. The Warren County Prosecutor filed a response on May 29, 2019.

[17] On June 19, 2019, the Warren County trial court denied Mendoza's motion to correct error and found, in part, as follows:

> [Mendoza's] additional evidence does not show that the Warren County Prosecutor was aware that the Motion to Suppress had been filed and the only day in Court would have to come from that hearing. The communications seem to suggest, in fact, that there was belief that, if the Motion was even filed, further motions would be filed and litigated in the Warren Circuit Court, but these all appear to have occurred before the motion was filed. The communications are ambiguous. While Defendant shows courtesy copy of the suppression order that was sent by email to the Warren County Prosecutor, despite the two being in active communications, there is no evidence to suggest a similar email was sent to alert the Warren County Prosecutor his evidence would be challenged in a foreign jurisdiction . . . .[n]ow an easy practice with the advancements of e-filing in Indiana.

> During this suppression hearing, the Fountain County Prosecutor called Officer Gene Sno[e]berger, who performed the searches. On direct examination, approximately 62 questions were asked of this witness, but only cursory questions dealt with the actual search in Warren County. There was no actual direct examination as to the scope and methodology of the search leading to the discovery of those alleged controlled substances found in the Warren County search, which were irrelevant to the Fountain County case. Then, after vigorous cross examination by the Defense Counsel on all aspects of the investigation leading to the issuance of the Search Warrant, the search in Fountain

County and the search in Warren County, the Fountain County Prosecutor's re-direct included just two additional questions with [respect to] the Warren County Search. Perhaps, if the Warren County Prosecutor was clearly aware that his evidence was being challenged in those proceedings, by that Motion, the case would have involved more than two questions or at least an opportunity to do so, so the issue could be fully litigated. The Court cannot conclude this amounts to a full and fair opportunity to litigate. As to the appeal issue, the Court noted in its original opinion that whether or not the Warren County Prosecutor had an opportunity to appeal, was not determinative to the Court. The law requires "a full and fair opportunity to litigate", not just to appeal the results of the litigation, though it does appear [Mendoza] made a good faith effort to notify the Warren County Prosecutor of the results.

Mendoza's App. Vol. II pp. 118-19 (internal citation omitted).

[18] On June 25, 2019, Mendoza filed another motion to suppress evidence in Warren County, wherein he challenged the validity of the Fountain County search warrant and the search of his vehicle in Warren County. The trial court conducted a hearing on Mendoza's second motion to suppress evidence on August 22, 2019. On September 10, 2019, the trial court entered an order on Mendoza's second motion to suppress and found, in pertinent part, that "it was not reasonable to search [the manila envelope and the glasses case] for the items in the search warrant, once [Assistant Chief Snoeberger] determined they could not contain the items to be searched for, based upon his touch and their visual appearance." Mendoza's App. Vol. II p. 134. The trial court denied Mendoza's motion to suppress regarding the marijuana and methamphetamine recovered from the wooden box and the digital scales found in the door

compartment. The trial court, however, found that the discovery of the drugs and digital scale did not authorize the police to exceed the scope of the search warrant by searching containers, by searching the manila envelope and the glasses case, which could not have contained the designated items to be seized pursuant to the search warrant. The trial court, thus, granted Mendoza's motion to suppress all evidence that was seized after the police searched the manila envelope and glasses case.

[19] On June 21, 2019, and on September 10, 2019, Mendoza moved for leave to certify the Warren County trial court's orders denying his motion to dismiss/suppress, his motion to correct error, and his second motion to suppress ("the Orders") for interlocutory appeal, which the trial court granted on September 17, 2019. On October 18, 2019, this Court denied Mendoza's motion to accept jurisdiction of interlocutory appeal.

[20] A jury tried Mendoza in the Warren County Cause on February 26, 2020. The jury found Mendoza not guilty of dealing in methamphetamine, a Level 2 felony; guilty of possession of methamphetamine, a Level 4 felony; guilty of possession of marijuana, a Class B misdemeanor; and guilty of maintaining a common nuisance, a Level 6 felony. The trial court sentenced Mendoza to 4,015 days in the Department of Correction, with 2,920 days executed and 1,095 days suspended to probation. The trial court ordered Mendoza's sentence to be served concurrently with Mendoza's sentence in the Fountain County Cause. Mendoza now appeals from the Warren County Court's denial of his motion to dismiss/suppress.

# Analysis

Mendoza argues that the trial court erred in determining that the State was not collaterally estopped from re-litigating the issue of the propriety of the vehicle search. "Our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues." *Perez-Grahovac v. State*, 894 N.E.2d 578, 583 (Ind. Ct. App. 2008) (quoting *Gooch v. State*, 834 N.E.2d 1052, 1053 (Ind. Ct. App. 2005), *trans. denied*). "We determine whether substantial evidence of probative value exists to support the trial court's denial of the motion." *Id*. We will not reweigh the evidence and will only consider the evidence most favorable to the trial court's ruling along with any uncontroverted evidence to the contrary. *Id*. "'[O]nce the State has obtained a magistrate's determination of probable cause, a presumption of validity obtains.'" *Id*. (quoting *Stephenson v. State*, 796 N.E.2d 811, 814 (Ind. Ct. App. 2003)) (quotation omitted). Where there is a presumption that the search warrant is valid, the defendant bears the burden to rebut the presumption. *Id*.

We will only reverse a trial court's decision regarding the use of collateral estoppel for an abuse of discretion. *Jennings v. State*, 714 N.E.2d 730, 732 (Ind. Ct. App. 1999), *trans. denied*. "Generally, collateral estoppel, also known as 'issue preclusion,' operates to bar relitigation of an issue or fact where the issue or fact was adjudicated in a former suit and the same issue or fact is presented in a subsequent suit." *Perez-Grahovac v. State*, 894 N.E.2d at 584.

> Collateral estoppel can be used either offensively or defensively depending upon how a party asserts the prior judgment.

Offensive collateral estoppel characterizes those situations where the plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party. Defensive collateral estoppel describes those instances where the defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff previously asserted and lost against another defendant.

*Id.* (citations omitted).[3]

### I. Collateral Estoppel Two-Part Test

[23] Mendoza seeks to employ defensive collateral estoppel to preclude the State from relitigating the propriety of the Warren County vehicle search. The principal consideration with the defensive use of collateral estoppel is whether the party against whom the prior judgment is pleaded had a full and fair opportunity to litigate the issue and whether it would otherwise be unfair under the circumstances to permit the use of collateral estoppel. *Perez-Grahovac*, 894 N.E.2d at 584; *see Reid*, 719 N.E.2d at 456-57.

[24] To determine whether collateral estoppel applies in a particular case, we first determine what issue or fact was decided by the first judgment; and second, we

---

[3] "Indiana no longer requires that the person taking advantage of the prior adjudication would have also been bound had the prior judgment been decided differently ('mutuality of estoppel') or that the party to be bound by the prior adjudication be the same as or in privity with the party in the prior action ('identity of parties')." *Jennings*, 714 N.E.2d at 732. "[B]ecause a stranger to a prior litigation may now invoke the doctrine, the use is referred to as 'nonmutual collateral estoppel.'" *Perez-Grahovac*, 894 N.E.2d at 584 (quoting *Reid*, 719 N.E.2d at 455).

examine how that determination bears on the subsequent action. *Reid*, 719 N.E.2d at 457. Application of the two-part test requires the court to examine:

> the record of the prior proceeding, including the pleadings, evidence, charge and any other relevant matters. The court must then decide whether a reasonable jury could have based its verdict upon any factor other than the factor of which the defendant seeks to foreclose consideration. If the jury could have based its decision on another factor, then collateral estoppel does not bar relitigation.

*Id*.

[25] Mendoza relies heavily upon *Jennings* in support of his claim. *Jennings* is instructive, albeit not precisely on-point. In *Jennings*, after a traffic stop of a vehicle driven by Jennings, a police officer asked Jennings, his male passenger, Pryor, and his female passenger, Lehr, to exit the vehicle. The officer sought and received permission to search Lehr's purse and saw Lehr surreptitiously concealing a package containing methamphetamine. The officer then sought and received Jennings' permission to search his vehicle. The initial search of the vehicle yielded marijuana, and a drug dog alerted to the possible presence of additional contraband in the dashboard. The police obtained a warrant to dismantle and search the dashboard, which revealed, among other things, three bags of methamphetamine.

[26] The State charged Jennings with drug offenses in Warrick County Circuit Court ("Circuit Court"), and also charged Pryor in Warrick County Superior Court ("Superior Court"). Pryor and Jennings filed motions to suppress evidence. As

to Pryor, the Superior Court found that: (1) the search of Lehr's purse "exceeded any necessary safety search for weapons" and suppressed evidence seized from that search; and (2) the evidence seized following the search of Jennings' vehicle was improper fruit of the poisonous tree because it stemmed from the improper purse search. *Jennings*, 714 N.E.2d at 733. Thus, the Superior Court suppressed all evidence from the searches. As a result, the State dismissed all charges against Pryor.

[27] On Jennings' motion to suppress evidence, he argued that, based on the Superior Court's grant of Pryor's motion to suppress the same evidence, "the State was estopped from relying upon those same searches and using the seized evidence against Jennings [before the] Circuit Court." *Id*. Notably, the State stipulated that it had a full and fair opportunity to litigate suppression issues regarding the propriety of the searches in the Pryor matter before the Superior Court. Nonetheless, the Circuit Court denied Jennings' motion to suppress.

[28] On appeal, this Court employed the two-step collateral estoppel test and reversed and remanded. Regarding the first step—determining what issue or fact was decided by the first judgment—this Court found that the issue determined by the Superior Court was the propriety of the search of Lehr's purse. Regarding the second step of the test—examining the effect of the Superior Court's determination on the Circuit Court matter—this Court found that the Superior Court's determination had "direct bear[ing] upon Jennings' case" before the Circuit Court because: (1) both matters involved the same search; (2) the State produced no new evidence regarding the validity of the

search and did not appeal the ruling in the Pryor matter; and (3) Pryor and Jennings challenged the evidence on identical grounds. This Court, thus, found that the State was collaterally estopped from relitigating the propriety of the purse search and from using the seized evidence.

[29] In the instant matter, regarding the first part of the collateral estoppel test—determining what issue or fact was decided by the first judgment—the record[4] reveals that the Fountain County court determined the propriety of the searches of Mendoza's Fountain County residence and Mendoza's truck in Warren County. The Fountain County Court entered an order suppressing the evidence located in the vehicle parked in Warren County.

[30] The Fountain County Court issued the search warrant "in conjunction with an on-going burglary and invasion of privacy investigation in [ ]Fountain County" for the Fountain County residence and the vehicle in Warren County. *See* Mendoza's App. Vol. II p. 133. The search of Mendoza's Fountain County residence yielded three firearms, marijuana, and a grinder; consequently, the State charged Mendoza with invasion of privacy, a Level 6 felony; unlawful possession of a firearm by a domestic batterer, a Class A misdemeanor; possession of marijuana, a Class B misdemeanor; and possession of paraphernalia, a Class C misdemeanor, in Fountain County.

---

[4] *See* Mendoza's App. Vol. II pp. 48-49 (Mendoza's Fountain County motion to suppress); *see also id.* at 50-83 (transcript of Fountain County suppression hearing); *id.* at 84-87 (Fountain County order granting Mendoza's motion to suppress).

[31] Similarly, the search of Mendoza's vehicle in Warren County, pursuant to the search warrant, yielded marijuana and methamphetamine evidence. The State subsequently charged Mendoza with dealing in methamphetamine, a Level 2 felony; possession of methamphetamine, a Level 3 felony; and possession of marijuana, a Class B misdemeanor, in Warren County.

[32] Next, we turn to the second step of the test. We, thus, examine the effect of the Fountain County court's determination on the Warren County Cause and consider whether the Fountain County Court could have based its decision on any factor other than that which Mendoza seeks to foreclose from consideration. We find that such is the case here. The Fountain County charges related to those facts/issues arising from the search of Mendoza's Fountain County residence, which differ from the facts/issues involved in the Warren County search of Mendoza's vehicle. The evidence seized from the vehicle search had no relevance to the charges in Warren County. It is, therefore, probable that the Fountain County Court based its decision regarding the propriety of the Fountain County search on a factor other than the factor that Mendoza now seeks to foreclose from consideration before the Warren County Court. *See Reid*, 719 N.E.2d at 457. The Fountain County Prosecutor was concerned with the propriety of the search of Mendoza's Fountain County residence, not the propriety of the search of the vehicle, which was not relevant to the charges filed in Fountain County.

[33] For the foregoing reasons, we conclude that the Fountain County Court could have based its decision regarding the propriety of the Fountain County search

on a different factor than that which Mendoza seeks to foreclose from consideration in the Warren County Cause; thus, the circumstances before us do not survive the second part of the collateral estoppel test. Accordingly, collateral estoppel does not prevent the Warren County Court from issuing an independent decision regarding the admissibility of evidence seized during the vehicle search.

## II. Full and Fair Opportunity to Litigate

[34] Our inquiry does not stop there. We must also consider "whether the party against whom the prior judgment is pl[ead]ed had a full and fair opportunity to litigate the issue and whether it would otherwise be unfair under the circumstances to permit the use of collateral estoppel." *See Perez-Grahovac*, 894 N.E.2d at 584 (quoting *Jennings,* 714 N.E.2d at 732).

[35] Mendoza argues that the State is collaterally estopped from challenging the propriety of the vehicle search because the State, "through the Fountain County Prosecutor": (1) "vigorously litigated"; (2) "had no restrictions or limitations placed on it"; (3) had a full and fair opportunity to litigate . . . the Warren County [vehicle] search in the Fountain County case"; (4) "failed to timely appeal the order" and "wants another opportunity to get a different result on the exact same issue." Mendoza's App. Vol. II p. 30. We cannot agree.

[36] The record from the Fountain County suppression hearing reveals that Fountain County Prosecutor Daniel Askren's questions were largely confined to the Fountain County-based events that preceded the application for,

issuance, and execution of the search warrant. The charges in Fountain County were based on evidence found and facts that occurred in Fountain County. Accordingly, because the Fountain County Prosecutor lacked the incentive to delve into the particulars of the Warren County vehicle search, the Fountain County Prosecutor's direct examination of Assistant Chief Snoeberger regarding the vehicle search consisted entirely of the following:

> Q: And did you conduct a search of the vehicle?
>
> A: We did. And what, if anything, was found? Do you recall?
>
> A: Inside the vehicle we located a wooden box that contained green plant material that was field tested to show . . . it was marijuana. There was a baggie that contained a substantial amount of white crystal like substance that was field tested positive as methamphetamine. There was a torch and plastic baggies, scale, digital scale, and the gun lock that we had seen from outside the vehicle. No firearm or ammunition was located inside the truck.

Mendoza's App. Vol. II pp. 12-13. The Fountain County Prosecutor did not inquire about Assistant Chief Snoeberger's approach to searching Mendoza's vehicle including the order in which areas of the vehicle (or items therein) were searched; the justification for searching certain areas or items; or the methodology for conducting the vehicle search as it was conducted. After defense counsel's vigorous examination regarding the vehicle search, the Fountain County Prosecutor only posed a few questions regarding the vehicle search on re-direct.

[37]　The record also includes Warren County Prosecutor Larson's response to Mendoza's second motion to correct error in Warren County wherein Larson maintains that he: (1) "never understood that [Mendoza] intended to litigate *Warren County issues* relating to the *Warren County case* during the hearing conducted in the *Fountain County case*"; (2) "belie[ved] and underst[ood]" that the Fountain County Court's decision would not be binding as to the Warren County case; and (3) surmised from defense counsel's intention to file a separate motion to suppress in Warren County and inquiry regarding the continued availability of a Warren County plea offer that Warren County issues would be litigated separately from Fountain County issues. *Id.* at 113. Additionally, Warren County Prosecutor Larson argued:

> 8. [T]he Motion to Suppress filed in Fountain County does not set forth the Warren County Caption or Cause Number, does not reference the charges pending in Warren County, and does not list the Warren County Prosecutor in the certificate of service. The absence of these supports the notion that Defense Counsel wanted to keep the cases (counties) separate to protect his plea offer in Warren County. Defense Counsel did nothing to put the Warren County Prosecutor's Office on notice that he intended to litigate a binding result for the Warren County case. . . .
>
> * * * * *
>
> 11. Counsel for Defendant did not file his Motion to Dismiss/Motion to Suppress Evidence in the Warren County case until March 15, 2019, more than four and one-half months after the ruling in the Fountain County case and well after the time for appealing the Fountain County ruling had passed.

*Id*. at 114-15 (emphasis in original); *see id*. at 116-17 (Larson averring that defense counsel did not give Warren County notice of the date or time of the Fountain County suppression hearing; the Fountain and Warren County prosecutors "did not discuss, strategize or work in concert . . . in preparation" for the Fountain County proceedings; Warren County did not receive the customary e-filing notice of the Fountain County suppression hearing and did not appeal the Fountain County Court's ruling regarding the vehicle search).

[38] After close review of the underlying record, we conclude that the Warren County Court did not err in refusing to apply the doctrine of collateral estoppel. The vehicle search was not fully litigated in Fountain County, and the evidence seized pursuant to the vehicle search had no bearing on the Fountain County prosecution. For these reasons, the record supports the finding that the Warren County Prosecutor lacked a full and fair opportunity to litigate suppression issues before the Fountain County Court and, thus, should not be precluded from presenting argument regarding the propriety of the vehicle search in the Warren County Cause.

## Conclusion

[39] The Warren County Court did not err in declining to apply the doctrine of defensive collateral estoppel because the Warren County Prosecutor lacked a full and fair opportunity to litigate suppression issues before the Fountain County Court. The Fountain County Court's order suppressing evidence seized from the vehicle is not binding upon the Warren County Court. We affirm.

Affirmed.

Kirsch, J., and Pyle, J., concur.