**Paul E. ARMSTRONG, Jr.,
Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–
Respondent.**

No. 38A02–1002–PC–137.

Court of Appeals of Indiana.

Sept. 1, 2010.

Paul E. Armstrong, Jr., Pendleton, IN, pro se.

Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Petitioner, Paul E. Armstrong, Jr. (Armstrong), appeals the denial of his petition for post-conviction relief.

We affirm.

*ISSUES*

Armstrong presents four issues for our review, which we restate as:

(1) Whether his first trial counsel provided ineffective assistance of counsel when she permitted Armstrong to plead guilty;

(2) Whether Armstrong's plea of guilty was knowing, intelligent, and voluntary;

(3) Whether a sufficient factual basis was established to support his plea of guilty to delivering methamphetamine, as a Class A felony, under former Ind.Code § 35–48–4–1; and

(4) Whether the trial court violated Armstrong's right to counsel by conducting a sentencing hearing after his first counsel had withdrawn her appearance,

but before appointed counsel entered an appearance on his behalf.

## FACTS AND PROCEDURAL HISTORY

On August 28, 2001, the State filed an Information charging Armstrong with dealing in a narcotic drug, as a Class B felony, I.C. § 35–48–4–1. On August 29, 2001, attorney Jill Gonzalez (Gonzalez) entered her appearance for Armstrong. On October 12, 2001, the State filed an additional Information in addition to the prior charge: Count 2, dealing in methamphetamine, a Class A felony, I.C. § 35–48–4–1(a)(1), and Count 3, dealing in methamphetamine, as a Class A felony, I.C. § 35–48–4–1(a)(2). On November 6, 2001, Armstrong filed a motion to suppress, which the trial court denied after a hearing on February 12, 2002. Armstrong requested permission to file an interlocutory appeal of the denial of his motion to suppress, but this request was denied by our court on June 4, 2002.

On October 30, 2002, Armstrong and the State entered into a written plea agreement. The plea agreement originally read that Armstrong agreed to plead guilty to "Count 1: Dealing in Methamphetamine a class 'A' felony," and that the State agreed to dismiss "Count 2: Dealing in Methamphetamine a class 'A' felony" and "Count 3: Dealing in Methamphetamine a class 'B' felony." (Appellant's App. p. 123). However, the trial court noticed that the counts as listed on the written plea agreement did not match the counts on the charging information. The trial court noticed the discrepancy and discussed the matter with Gonzalez and the State who informed the trial court that Armstrong intended to plead guilty to either Count 2 or Count 3, which were both Class A felonies, it did not matter which. The trial court then wrote on the plea agreement a "2" over the typed "1" to change the number for the Count to which Armstrong was pleading guilty and had Armstrong, Gonzalez, and counsel for the State place their initials next to the change. (Appellant's App. pp. 40, 123).

Thereafter, the trial court asked Armstrong "is it your intention to withdraw your former plea of not guilty to Count # 2, and enter a plea of guilty to that charge today?" (Appellant's App. p. 40). Armstrong responded affirmatively and confirmed that he understood that Count 2 was a Class A felony, and admitted that he had "knowingly deliver[ed] methamphetamine, having a weight of three (3) grams or more, in violation of Indiana Code [section] 35–48–4–1(a)(1)." (Appellant's App. p. 41). Armstrong also confirmed that he understood the potential penalty for a Class A felony, and that, because of a prior felony conviction, he was required to serve at least the minimum sentence. Armstrong verified that the plea agreement called for a forty-year sentence with ten of those years suspended to probation, and that he was agreeing to those terms. The trial court took the plea agreement under advisement and set a sentencing hearing for January 6, 2003.

At the sentencing hearing, the trial court noted that Gonzalez had filed a motion to withdraw her appearance at Armstrong's request. Armstrong informed the trial court that he was unsatisfied with Gonzalez "because of what I've found out and things I know today." (Appellant's App. p. 52). The trial court granted the motion to withdraw and proceeded with the sentencing hearing. Armstrong stated that he wished to withdraw his plea of guilty, but the trial court noted that no written verified motion was before the trial court at that time and sentenced Armstrong in accordance with the plea agreement. After the trial court announced his sentence, Armstrong asked "what do I

need to do now, 'cause I need counsel.'" (Appellant's App. p. 63). The trial court inquired about Armstrong's resources to hire his own counsel and appointed pauper counsel to consider whether filing a motion to withdraw his guilty plea was warranted.

On February 4, 2003, Armstrong filed a verified motion to withdraw his guilty plea. On March 3, 2003, the trial court conducted a hearing on the motion. Armstrong testified that his first trial counsel advised him that he would likely receive the maximum sentence on all Counts for an aggregate sentence of 120 years. He also testified that he did not understand that he would be placed on probation for 10 years after serving the executed portion of his sentence. Furthermore, Armstrong testified that he did not sell any methamphetamine to anyone, but did use methamphetamine and tried to manufacture some for his own use. Armstrong did not call Gonzalez to testify.

On March 5, 2003, the trial court issued its Order denying Armstrong's motion to withdraw his guilty plea. The trial court found that Armstrong's testimony at the hearing was incredible:

> [I]n light of his conflicting testimony and selective memory, as well as the timing of his motion. Plea negotiations had been ongoing. [Armstrong] demonstrated [an] understanding of his rights, the potential penalties, and the nature of the charges. No manifest injustice would result if his motion is denied and the decision of whether to grant or deny the motion is within the discretion of the [c]ourt.

(Appellant's App. p. 20).

On April 14, 2003, Armstrong filed a petition for post-conviction relief. On March 23, 2005, a petition for belated direct appeal was filed, which was denied by the post-conviction court on May 5, 2005. Armstrong appealed the denial of his petition for a belated direct appeal, and we affirmed the denial on November 14, 2005. On February 14, 2006, Armstrong amended his petition for post-conviction relief. On November 2, 2009, the post-conviction court held an evidentiary hearing where Armstrong presented the transcripts of the plea hearing, sentencing hearing, and the hearing on the motion to withdraw his guilty plea, as exhibits. In addition, Armstrong filed an affidavit from Gonzalez. Armstrong did not present any live testimony. On January 14, 2010, the postconviction court denied Armstrong's petition for post-conviction relief.

Armstrong now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

■ The petitioner has the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). Because Armstrong is appealing from a negative judgment, to the extent his appeal turns on factual issues, he must provide evidence that as a whole unerringly and unmistakably leads us to believe there is no way within the law that a post-conviction court could have denied his postconviction relief petition. *See Stevens v. State*, 770 N.E.2d 739, 745 (Ind.2002), *reh'g denied, cert. denied*, 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 56 (2003). It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law. *Godby v. State*, 809 N.E.2d 480, 482 (Ind.Ct.App. 2004), *trans. denied*. Post-conviction hearings do not afford defendants the opportunity for a "super appeal." *Moffitt v. State*, 817 N.E.2d 239, 248 (Ind.Ct.App.2004),

*trans. denied.* Rather, post-conviction proceedings provide a narrow remedy for collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Ross v. State,* 877 N.E.2d 829, 832 (Ind.Ct.App.2007), *trans. denied.*

## II. *Effectiveness of Gonzalez*

██ Armstrong contends that Gonzalez provided him ineffective assistance of counsel by permitting him to plead guilty. Specifically, he argues that Gonzalez did not investigate the facts or research the law to determine if he could be convicted of dealing methamphetamine as a Class A felony, and she "impelled" Armstrong to sign-off on the change of his plea agreement. (Appellant's Br. p. 12).

██ Armstrong alleges that Gonzalez provided ineffective performance in violation of Article 1, Section 13 of the Indiana Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. In order to demonstrate ineffective assistance of counsel Armstrong must establish both prongs of the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied. Lee v. State,* 880 N.E.2d 1278, 1280 (Ind.Ct.App.2008). The defendant must prove (1) his or her counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's failure to meet prevailing professional norms, the result of the proceeding would have been different. *Johnson v. State,* 832 N.E.2d 985, 996 (Ind.Ct.App.2005), *reh'g denied, trans. denied* (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). Essentially, the defendant must show that counsel was deficient in his or her performance and the deficiency resulted in prejudice. *Johnson,* 832 N.E.2d at 1006. Because all

criminal defense attorneys will not agree on the most effective way to represent a client, "isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Bieghler v. State,* 690 N.E.2d 188, 199 (Ind.1997), *reh'g denied, cert. denied,* 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). Thus, there is a strong presumption that counsel rendered adequate assistance and used reasonable professional judgment. *Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001). If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Id.*

We note that Armstrong did not testify at the post-conviction hearing, nor did Gonzalez. Armstrong did, however, present an affidavit from Gonzalez, but that affidavit did not address how Gonzalez investigated or researched Armstrong's defense. Regarding her representation of Armstrong, Gonzalez stated by affidavit:

3. I discussed the State's evidence with [Armstrong] and explored all of the potential defenses available to him;

4. [Armstrong] and I discussed the fact that the State had substantial evidence against [him], including his confessions;

5. I advised [Armstrong] of the possible prison sentence that could be imposed should [he] be convicted of all counts under the above cause at trial;

6. Prior to trial the State of Indiana offered the plea agreement, which [Armstrong] entered into on October 30, 2002;

7. I discussed the proposed plea with [Armstrong] and advised him of the advantages and disadvantages of accepting this plea as well as the advantages and disadvantages of proceeding to trial;

8. The decision as to whether or not to enter into a plea agreement or proceed to trial was left up to the discretion of [Armstrong];

9. Upon [Armstrong's] request, I requested the [c]ourt to schedule this matter for a guilty plea hearing[.]

(Appellant's App. p. 178). Standing alone, Gonzalez's affidavit gives no indication that even the slightest mistake occurred during her representation of Armstrong, and, therefore, fails to prove any deficient performance.

Armstrong attempts to prove Gonzalez's deficient performance by relying upon his prior testimony from the withdrawal of plea hearing on March 3, 2003. At that hearing, Armstrong testified that Gonzalez misinformed him as to the sentence he would likely receive if he rejected the guilty plea and was convicted at trial. However, as the trial court noted in its Order denying Armstrong's petition for post-conviction relief, the trial court found Armstrong's testimony at the withdrawal of plea hearing to be incredible. The trial court's denial of Armstrong's motion to withdraw his plea of guilty was not challenged by way of appeal and the trial court's determination that his testimony was unbelievable carries the effect of collateral estoppel. *See Perez–Grahovac v. State,* 894 N.E.2d 578, 584 (Ind.Ct.App. 2008), *trans. denied* ("Generally, collateral estoppel, also known as 'issue preclusion,' operates to bar relitigation of an issue or fact where the issue or fact was adjudicated in a former suit and the same issue or fact is presented in a subsequent suit."). Therefore, Armstrong has presented nothing but previously determined incredible testimony in an attempt to prove that Gonzalez performed deficiently. Therefore, we conclude that the trial court did not err when it determined that Armstrong failed to prove that Gonzalez provided him with ineffective assistance of counsel.

### III. *Voluntariness of Armstrong's Plea*

■ Armstrong contends that his plea of guilty was not voluntarily given because he was misadvised regarding the possible consequence of going to trial. However, as we discussed above, the only evidence presented to the post-conviction court that could support a conclusion that Armstrong was advised that he faced a potential 120–year sentence was Armstrong's prior testimony that had already been found to be incredible. Therefore, we conclude that collateral estoppel controls, and Armstrong's claim that he was misadvised of the possible consequence of going to trial must fail. *See Perez–Grahovac,* 894 N.E.2d at 584.

### IV. *Sufficient Factual Basis*

■ Armstrong contends on appeal that the factual basis developed at the plea hearing did not support the crime for which he pled guilty and was convicted. The State contends, in response, that Armstrong did not present this issue in his amended petition for post-conviction relief or make any contentions regarding this claim to the postconviction court. From our review of the record, we note that Armstrong's amended petition did not present as an independent issue the lack of a sufficient factual basis, but did state as follows:

During the establishment of the factual basis [at the plea hearing] the Prosecutor merely states that two officer's would provide evidence, if the case proceeded to trial, showing Armstrong delivered Methamphetamine. It is not established that Armstrong is admitting to delivering Methamphetamine to any specific person or that the information provided by the Prosecutor actually establishes the crime with which Armstrong

was charged. The record reveals that the establishment of the factual basis is nothing more than the Prosecutor's statement of what he expects his witnesses to testify to at trial. The [c]ourt asks Armstrong if this is a true statement and he replies "yes."

(Appellant's App. p. 142). This same language was included in Armstrong's proposed findings of fact and conclusions of law submitted to the post-conviction court. (Appellant's App. p. 183). However, Armstrong proposed no conclusion regarding a lack of sufficient factual basis.

Admittedly, Armstrong could have done a better job advancing his claim of lack of sufficient basis to preserve it for appeal. But, because we prefer to address issues on their merits where possible, we will address the merits of Armstrong's claim here. *See Welch v. State*, 828 N.E.2d 433, 436 (Ind.Ct.App.2005). Moreover, the post-conviction court addressed this issue in its Order denying Armstrong's petition for post-conviction relief, by stating: "The facts alleged in the factual basis provided by the State constituted the offense charged." (Appellant's App. p. 13).

At the guilty plea hearing, after the issue regarding which Count Armstrong agreed to plead guilty to had been clarified, the trial court directly inquired of Armstrong:

> [THE COURT]: Alright; uh, you understand that Count #2 is charging [ ] dealing in methamphetamine is a Class A felony; it alleges that on or about August 23, 2001, in Jay County Indiana, that you did knowingly deliver methamphetamine, having a weight of three (3) grams or more in violation of Indiana Code [§ ] 35–48–4–1(A)(1); it's a Class A felony; do you understand what you're charged with?
>
> [ARMSTRONG]: Yes[.]

> [THE COURT]: Do you understand that by pleading guilty, you'd be admitting that you committed the crime, that you would be judged guilty and sentenced without any trial?
>
> [ARMSTRONG]: Yes[.]

(Appellant's App. pp. 40–41). Thereafter, the State presented the following factual basis to support Armstrong's conviction:

> Your Honor, if this cause came to trial, State of Indiana would present to us [testimony] [sic] from Officer Rob Ricks of the Indiana State Police [and] Officer [ ] Mitch Sutton from the Jay County Sherif[f]'s Department, that on or about August 23rd in Jay County in the State of Indiana, [ ] the defendant[,] Paul E. Armstrong, Jr.[,] did deliver meth, methamphetamine in, in a weight in excess of three (3) grams. [T]he State of Indiana would further present testimony from the laboratory of the Indiana State Police that in fact, the substance delivered was [ ] methamphetamine. [T]hese events again, here in Jay County in the State of Indiana.

(Appellant's App. p. 44). Thereafter, the trial court inquired as to whether Armstrong heard the factual basis, and whether he believed it to be true, to which Armstrong replied "Yes" to both questions. (Appellant's App. p. 44).

We conclude that the factual basis established by the State was sufficient to support his conviction. The State clearly stated that, if a trial were to take place, it would present evidence that Armstrong delivered more than three grams of methamphetamine. Armstrong acknowledged that he believed that to be true. Furthermore, the trial court read to Armstrong the allegations of his crime, delivering more than three grams of methamphetamine, and Armstrong confirmed that he committed that crime. Therefore, we conclude that there was a sufficient factual

basis developed at the change of plea hearing to support Armstrong's act of pleading guilty.

### V. *Lack of Counsel at Sentencing*

■■■■ Armstrong contends that he was denied counsel at his sentencing hearing when his counsel was permitted to withdraw her appearance and the trial court insisted that the sentencing hearing proceed with no counsel representing Armstrong. The State points out that Armstrong requested that Gonzalez be removed as his counsel, and the trial court warned Armstrong that it was not going to continue the sentencing hearing if it granted Armstrong's request. Armstrong replied to the trial court's warning: "I see potential benefit if she withdraws and you allow it. I'm prepared for what you do today." (Appellant's App. p. 51). However, sentencing is a critical stage in a criminal proceeding and a defendant is entitled to counsel at all critical stages. *Mosley v. State,* 908 N.E.2d 599, 604 (Ind.2009).

■■■■ "A criminal defendant's Sixth Amendment right to counsel is essential to the fairness of a criminal proceeding." *Drake v. State,* 895 N.E.2d 389, 392 (Ind. Ct.App.2008). When a criminal defendant forfeits his right to representation by counsel, the defendant "gives up many benefits" and must " 'knowingly and intelligently' forgo those relinquished benefits." *Id.*

The State argues that Armstrong's claim that he was denied assistance of counsel at his sentencing hearing fails for two reasons: (1) Armstrong had hired private counsel and, therefore, we can assume that he was aware of the benefits that legal counsel provide to criminal defendants; and (2) even if Armstrong did not knowingly or intelligently forgo his benefit of legal counsel, this constitutional error was harmless. We are hesitant to state that the fact that a criminal defendant had hired counsel at one point in time supports a presumption that the defendant understood the pitfalls of self-representation. However, because we conclude that harmless error analysis resolves this issue, we need not address whether Armstrong 'knowingly and intelligently' relinquished his right to counsel.

■■■■ Where a constitutional error is argued to be harmless error, we review the claim to determine if the error was harmless beyond a reasonable doubt. *See Major v. State,* 873 N.E.2d 1120, 1128–29 (Ind.Ct.App.2007), *trans. denied.* Typically, we conclude that a constitutional error is harmless if it is clear beyond a reasonable doubt that it did not contribute to the conviction. *See Sobolewski v. State,* 889 N.E.2d 849, 857 (Ind.Ct.App.2008), *trans. denied; see also Morales v. State,* 749 N.E.2d 1260, 1267 (Ind.Ct.App.2001) ("The court must find that the error did not contribute to the verdict[.]"). However, Armstrong's claim of constitutional error was lack of counsel during his sentencing hearing, and, therefore, could not have contributed to his conviction.

Furthermore, Armstrong's sentence was defined by the plea agreement. The agreement specifically called for a 40 year sentence with 10 of those years suspended, for an executed sentence of 30 years. This is the sentence that the trial court was bound to impose once the trial court accepted Armstrong's plea of guilty. *See Blakemore v. State,* 925 N.E.2d 759, 762 (Ind.Ct.App.2010) ("A plea agreement is contractual in nature, binding the defendant, the state, and the trial court."). For this reason, if we were to find that the error which Armstrong complains of demands that he be given a new sentencing hearing with counsel present, the trial court would be bound to impose the identical sentence. As our supreme court has

observed, "[w]e see no reason to require revisiting a guilty plea if, at the end of the day, the inevitable result is conviction and the same sentence." *Segura v. State*, 749 N.E.2d 496, 507 (Ind.2001). Therefore, we conclude that any error stemming from Armstrong's lack of counsel at the sentencing hearing was harmless beyond a reasonable doubt.

### CONCLUSION

Based on the foregoing, we conclude that: (1) the post-conviction court did not err by finding that Armstrong received effective assistance of counsel; (2) Armstrong's plea of guilty was voluntary; (3) the State established a sufficient factual basis; and (4) any error that stemmed from Armstrong not being represented by counsel at the sentencing hearing is harmless beyond a reasonable doubt.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.