**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**RONALD A. BOHANNON**
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RONALD A. BOHANNON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 28A01-1203-CR-115 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE GREENE CIRCUIT COURT
The Honorable Gregory A. Smith, Special Judge
Cause No. 28C01-1109-PC-38

**October 4, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Ronald A. Bohannon (Bohannon), appeals the post-conviction court's order regarding his petition for post-conviction relief.

We affirm.

## ISSUES

Bohannon raises four issues on appeal, three of which we find dispositive and which we restate as follows:

(1) Whether the post-conviction court erred in denying his claim that his sentence violated federal and state constitutional prohibitions against double jeopardy;

(2) Whether the post-conviction court erred in denying his claim that the State violated Ind. Code § 35-34-1-5(e) when it filed his habitual offender charge past the omnibus date; and

(3) Whether the post-conviction court erred in denying his claim that his trial counsel provided ineffective assistance.

## FACTS AND PROCEDURAL HISTORY

On August 16, 2009, George Dallaire (Officer Dallaire), a Detective with the Greene County Sheriff's Department, received a dispatch concerning a shooting in Greene County. After learning that the victim, T.B., had been admitted to the Greene County General Hospital and was there along with his father, Officer Dallaire proceeded to the hospital to investigate. By the time Officer Dallaire arrived at the hospital, T.B. had passed away from his injuries. Officer Dallaire nevertheless examined T.B.'s body

and discovered that he was a fourteen month old male infant who had received a gunshot wound to his head. Based on partially burned and unburned gunpowder around the wound, Officer Dallaire estimated that the gun had been discharged from within a distance of four or five feet.

After examining T.B., Officer Dallaire spoke with T.B.'s father, Bohannon, who had been pushing T.B. in a stroller when he was shot. Bohannon told the Officer that he had taken his children, S.B. and T.B., for a walk when he heard a "pop" near an old abandoned house on the road. (Transcript p. 26). A second later, Bohannon noticed that T.B. had been injured. Officer Dallaire asked Bohannon who he thought might be responsible and Bohannon told him that he had recently been involved in an altercation with his wife, Jamie Bohannon's, ex-husband, Carl Finley (Finley), who had threatened that he would "take care of [him.]" (Tr. p. 26). In a separate interview, Tanya Salesman (Salesman), a woman who lived with Bohannon, also indicated that she believed Finley was responsible. Later that night, Officer Dallaire interviewed S.B., who told the Officer that he "thought the pop came from the gun that daddy had in his pants." (Tr. p. 30). This declaration contradicted previous claims by Bohannon and Salesman that although they owned and kept a shotgun in their closet, they did not own any handguns.

Meanwhile, a crime scene investigator collected Bohannon's clothes from the hospital to swab for gunpowder, and a detective swabbed Bohannon's hands. As his hands were being swabbed, Bohannon told the detective that he had gotten his shotgun from the closet after T.B.'s shooting, lain down in a military position, and fired one shot

3

before putting the shotgun back in the closet. However, Officer Dallaire examined the shotgun and determined that it had not been fired in at least a month or more because its barrel was full of cobwebs and dust.

Two days later, Officer Dallaire interviewed Finley and discovered that he had an alibi for the time of the shooting. Officer Dallaire brought Bohannon and Salesman in for further questioning, but Bohannon's story remained essentially the same. When Officer Dallaire confronted Bohannon with the evidence that his shotgun had not been used recently, Bohannon maintained that he had fired it the night of T.B.'s shooting.

On August 18, 2009, Bohannon was arrested on unrelated charges. While in custody, he admitted to the detectives that he had accidentally shot T.B. He told them that he had tucked a .38 caliber revolver into his belt prior to his walk with his sons and cocked the gun when he heard a noise on the walk. Then, when he heard more noises he pulled the gun out from behind his back, placed his fingers on the trigger and hammer, and placed the gun on the stroller handles. At that point, the gun accidentally discharged and struck T.B. in the head.

During the same interview, Bohannon admitted that in addition to the revolver, he also owned a .45 caliber semi-automatic handgun. When Officer Dallaire asked him where both handguns were, Bohannon replied that the semi-automatic handgun should still be in the house, but that he thought Salesman had thrown the revolver in a field behind the house. According to Bohannon, he had purchased the revolver from a person

in Terre Haute whom he knew dealt in stolen guns. He further admitted that he and Salesman had agreed to blame Finley for the shooting.

Subsequently, the detectives searched the field behind Bohannon's house and found the revolver, but could not find Bohannon's other handgun. They discovered that the revolver had been stolen from a residence in Clay County in June of 2009 and that witnesses had seen Salesman's car at the scene of the burglary. They also learned that Bohannon was not licensed to carry a handgun.

On August 20, 2009, the State filed an Information charging Bohannon with six Counts, including Count I, reckless homicide, a Class C felony; Count III, possession of a handgun without a license, a Class A misdemeanor; Count IIIA, an enhancement of Count III to a Class C felony based on prior felony convictions; and Count IV, receiving stolen property, a Class D felony.[1] At Bohannon's initial hearing, the trial court set a trial date for January 26, 2010 and an omnibus date of October 12, 2009. Subsequently, on November 18, 2009, the State filed an additional Information charging Bohannon with being an habitual offender, Ind. Code § 35-50-2-8. One month later, on December 18, 2009, Bohannon pled guilty to Counts I, III, IIIA, IV, and to being an habitual offender. In exchange, the State dismissed the remaining charges and left Bohannon's sentence to the trial court's discretion. On January 29, 2010, the trial court accepted the plea agreement and entered a judgment of conviction on the charges.

---

[1] As Bohannon has not provided us with a copy of his charging Information, we do not know what offenses he was charged with in Counts II, V and VI.

That same day, the trial court held a sentencing hearing and sentenced Bohannon to eight years on Count I; seven years on Counts III and IIIA; two years on Count IV, and five years for being an habitual offender. The trial court ordered that the sentences for Counts I, III, and IIIA should be served consecutively, with the sentence for Count IV served concurrently to Counts III and IIIA, and the sentence for being an habitual offender served consecutively to all of the sentences.[2] Bohannon did not file a timely appeal.

On September 16, 2011, Bohannon filed a petition for post-conviction relief in which he alleged that (1) the trial court had erred by adding a double enhancement to his sentence for possessing a handgun without a license; (2) his trial counsel's assistance had been ineffective; (3) the trial court had been biased and prejudiced; (4) his sentence was erroneous under I.C. § 35-38-1-15; (5) his sentence violated double jeopardy prohibitions; and (6) the State had erred by filing his habitual offender charge after the omnibus date. On January 13, 2012, the post-conviction court held an evidentiary hearing, and on February 8, 2012, the post-conviction court granted Bohannon's claim with respect to his double sentence enhancement, but denied the remaining claims.

The next day, on February 9, 2012, the trial court entered a corrected sentencing order in which it sentenced Bohannon to eight years on Count I; seven years on Counts

---

[2] The trial court did not attach Bohannon's habitual offender charge to any particular Count. The post-conviction court recognized this error, stating "[i]n addition, a habitual felony offender [C]ount is an enhancement of a sentence and does not run consecutive to any sentence imposed on the underlying crime(s). It merely enhances one and only one of the underlying offences." (Appellant's Br. p. 14). Therefore, the post-conviction court interpreted the charge as attached to Count III.

III and IIIA, to be served consecutively to Count I; two years on Count IV, to be served concurrently with Counts I and IIIA; and five years for being an habitual offender, attached to Count I. In aggregate, Bohannon's sentence totaled twenty years.

Bohannon now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

On appeal from the denial of post-conviction relief, a petitioner stands in the position of one appealing from a negative judgment. *Mauricio v. State,* 941 N.E.2d 497, 498 (Ind. 2011). In such a case, a petitioner must show that the evidence, taken as a whole, leads unerringly and unmistakably to a conclusion opposite that reached by the trial court. *Id.* We do not defer to the trial court's legal conclusions, but we will reverse only on a showing of clear error. *Id.* Moreover, this court will only consider the probative evidence and all reasonable inferences therefrom that support the post-conviction court's determination and will not reweigh the evidence. *Bigler v. State,* 732 N.E.2d 191, 194 (Ind. Ct. App. 2000)*, trans. denied.*

II. *Double Jeopardy*

First, Bohannon argues that the State violated federal and state prohibitions against double jeopardy when it charged him with possessing the same handgun without a license in both Counts III and IIIA. Bohannon's sentence on Count III, possession of a handgun without a license, a Class A misdemeanor, was enhanced by Count IIIA to a Class C felony based on three prior felony convictions. Our supreme court has held that:

> Prohibitions against double jeopardy protect against: (1) reprosecution for
> an offense after a defendant has already been convicted of the same offense

7

in a previous prosecution; (2) reprosecution of a defendant after an acquittal; (3) *multiple punishments for the same offense in a single trial*; (4) reprosecution of a defendant after the conviction has been reversed for insufficient evidence; (5) criminal reprosecution of a defendant in limited circumstances following a previous civil prosecution; [and] (6) reprosecution of a defendant in limited circumstances after a mistrial has been declared.

*Richardson v. State,* 717 N.E.2d 32, 37 n.3 (Ind. 1999). Whether convictions violate double jeopardy is a pure question of law, which we review *de novo. Rexroat v. State,* 966 N.E.2d 165, 168 (Ind. Ct. App. 2012), *trans. denied.*

Bohannon has not provided us with his charging Information, but we presume that he was charged under I.C. § 35-47-2-1, which prohibits carrying a handgun "in any vehicle or on or about the person's body without being licensed," subject to certain exceptions. Pursuant to I.C. § 35-47-2-23(c), the offense is a Class C felony if the person has been convicted of a felony within the previous 15 years. Regardless of the statutory authority for Bohannon's charges, however, we will not address his argument that he has suffered from double jeopardy because it is clear that he has waived any such claims. It is a well-established rule that a defendant who enters a plea agreement to achieve an advantageous position must keep the bargain. *Games v. State,* 743 N.E.2d 1132, 1135 (Ind. 2001). *Id.* "[D]efendants who plead guilty to achieve favorable outcomes give up a plethora of substantive claims and procedural rights, such as challenges to convictions that would otherwise constitute double jeopardy." *State v. Parham,* 913 N.E.2d 770, 772-73 (Ind. Ct. App. 2009), *trans. denied.* This is because "retaining a benefit while relieving oneself of the burden of the plea agreement 'would operate as a fraud upon the

8

court.'" *Games,* 743 N.E.2d at 1135. Accordingly, Bohannon has waived his double jeopardy claim, and we will not address it any further.

### III. *Habitual Offender Charge*

Next, Bohannon argues that the State violated I.C. § 35-34-1-5(e) when it filed his habitual offender charge 37 days past the omnibus date of October 12, 2009. I.C. § 35-34-1-5(e) provides that "[a]n amendment of an indictment or [I]nformation to include a habitual offender charge under [I.C. §] 35-50-2-8, [I.C. §] 35-50-2-8.5, or [I.C. §] 35-50-2-10 must be made not later than ten (10) days after the omnibus date. However, upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of trial." Here, the trial court set an omnibus date of October 12, 2009, and the State filed the habitual offender charge on November 18, 2009. One month later, on December 18, 2009, Bohannon admitted the habitual offender charge, while pleading guilty to the other charges. There is no evidence in the record that the State made a showing of good cause for the belated filing or that the trial court found good cause.

As above, however, we conclude that Bohannon has waived this claim. Our supreme court recently held in *White v. State,* 963 N.E.2d 511, 518 (Ind. 2012), that a defendant waives a claim that the State did not timely file a habitual offender charge less than ten days past the omnibus date if the defendant fails to request a continuance after the trial court permits the tardy filing. The supreme court clarified in *White* that this rule does not have any exceptions, even if the State does not articulate any grounds for good

9

cause in its written motion requesting permission to belatedly file the habitual offender charge, and even if the trial court does not make an explicit finding of good cause. *Id.* at 517-18. Because Bohannon did not request a continuance after the State's tardy filing, we conclude that he has waived his claim. Nevertheless, we will explore this issue further within the context of Bohannon's ineffective assistance of counsel claim.

IV. *Ineffective Assistance of Counsel*

Lastly, Bohannon raises four separate arguments with respect to his trial counsel's assistance. He argues that, in violation of the Sixth Amendment of the United States Constitution and Article I, section 13 of the Indiana Constitution, his counsel provided ineffective assistance when counsel failed to: (1) bring "several mistakes" to the trial court's attention; (2) properly investigate mitigating factors; (3) challenge Bohannon's sentence within the thirty-day time limit allowed for direct appeal; and (4) object or request a continuance when the State filed its Information charging Bohannon with being an habitual offender 37 days past the omnibus date without a showing of good cause. (Appellant's Br. p. 7).

The Sixth Amendment guarantees the effective assistance of counsel to all criminal defendants, as does Article I, section 13. In order to establish ineffective assistance of counsel under either provision, a defendant must fulfill both prongs of the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied. Specht v. State,* 838 N.E.2d 1081, 1087 (Ind. Ct. App. 2005)*, trans. denied*. First, the defendant must prove that his or her counsel's performance fell below

10

an objective standard of reasonableness based on prevailing professional norms, and, second, that there is a reasonable probability that, but for counsel's failure to meet prevailing professional norms, the result of the proceeding would have been different. *Armstrong v. State,* 932 N.E.2d 1263, 1268 (Ind. Ct. App. 2010). The elements of *Strickland* are separate and independent inquiries. *Landis v. State,* 749 N.E.2d 1130, 1134 (Ind. 2001). Thus, if it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, that course should be followed. *Id.* The presumption that an attorney has fully discharged his duty is overcome for purposes of post-conviction relief only by showing that the attorney's action or inaction made the proceedings a mockery of justice that is shocking to the conscience of the court. *Whitlock v. State,* 456 N.E.2d 717, 718 (Ind. 1983).

## A. *Mistakes and Mitigating Factors*

The State argues, and we agree, that Bohannon has failed to present a cogent argument with respect to his claims that his counsel was ineffective for failing to bring mistakes to the trial court's attention and to investigate potential mitigating factors. Pursuant to the Indiana Appellate Rules, the failure to present a cogent argument in a brief results in waiver of the issue on appeal. *See* Ind. Appellate Rule 46(A)(8)(a). Here, Bohannon does not identify the alleged mistakes that he thinks his counsel should have brought to the trial court's attention, so we cannot evaluate the merits of whether such mistakes prejudiced his defense. Bohannon also fails to explain what mitigating factors were present that might have impacted his sentence, had his counsel investigated the

11

factors and presented them to the trial court. Counsel did present mitigating evidence that Bohannon was a dedicated and caring father prior to the shooting, and it is not clear from the transcript that counsel overlooked other potential mitigating factors. Since Bohannon has not clarified his arguments, we conclude that he has waived both claims.

B. *Failure to Object to Habitual Offender Charge*

Next, we turn to Bohannon's claim that his trial counsel provided ineffective assistance by failing to object or move for a continuance when the State filed the Information charging him with being an habitual offender 37 days past the omnibus date. As we found above, in order to preserve the claim, counsel was required to request a continuance at the time of the belated filing, which counsel did not do. *See White,* 963 N.E.2d at 518. However, we need not address the reasonableness of counsel's performance in light of prevailing professional norms because we conclude that Bohannon was not prejudiced by counsel's actions.

In *Segura v. State,* 749 N.E.2d 496, 503 (Ind. 2001), our supreme court held that when a defendant who has pled guilty subsequently alleges that an error by counsel affected one of the defendant's defenses, the defendant must show that he would have had a reasonable probability of success at trial absent the error. This reasoning is in part grounded in the cost of a new trial and the demands on judicial resources that are used revisiting a guilty plea, but also in concerns about the toll a retrial exacts from victims and witnesses who are required to revisit the crime years later. *Id.*

12

Even assuming that counsel's performance was deficient for failing to object to the State's late filing of the habitual offender Information, Bohannon cannot show that the result of his proceeding would have been different absent the error because he has not provided any evidence that the State did not have good cause for its untimely filing; nor is there any in the record. Pursuant to I.C. § 35-34-1-5(e), the court may permit the filing of an habitual offender charge at any time before the commencement of trial upon a showing of good cause for the untimely charge.

Moreover, there is little evidence that Bohannon would have been successful disputing the habitual offender charge at trial if counsel had requested a continuance based on the untimely addition. The State charged Bohannon as being an habitual offender under I.C. § 35-50-2-8, which provides that the State may seek to have a person's sentence enhanced as an habitual offender for any felony by alleging that the person has accumulated two prior unrelated felony convictions. In the instant case, Bohannon pled guilty to Count I, reckless homicide, a Class C felony, and Count IV receiving stolen property, a Class D felony. He does not dispute that at the time of his plea he had three prior felony convictions from 1998: Class D felony theft in cause number 11-C01-9807-CF-46; and Class C felony forgery and Class D felony receiving stolen property in cause number 11D01-9809-CF-822. Accordingly, we conclude that since Bohannon had two prior unrelated felony convictions, he would not have had a reasonable probability of success disputing the habitual offender charge at trial. *See* I.C.

13

§ 35-50-2-8. As a result, we are not persuaded that Bohannon's counsel provided ineffective assistance for failing to request a continuance.

### C. *Failure to File a Timely Appeal*

Finally, we turn to Bohannon's argument that the post-conviction court erred in denying his claim that his counsel provided ineffective assistance when he failed to file a timely appeal. Bohannon does not clarify what claims his counsel should have raised on appeal. Accordingly, we will evaluate his claim with respect to the issues that he raised before the post-conviction court. Only one of those claims would have been permissible on appeal.

It is a well-established rule that a person who pleads guilty is not permitted to challenge the propriety of the underlying convictions on direct appeal. *Jensen v. State,* 905 N.E.2d 384, 395 (Ind. 2009). Such a person is only entitled to bring a direct claim against the sentence imposed following the plea agreement, and only if that sentence is one in which the trial court exercised sentencing discretion. *Id.* Any challenge to a conviction imposed as a result of a guilty plea where the trial court exercised no discretion must be made through the proper procedure afforded by the Indiana Rules of Procedure for Post-Conviction Remedies. *Id.*

Accordingly, only one of the claims that Bohannon raised before the post-conviction court would have been eligible for direct appeal: that the trial court erred in imposing a double sentence enhancement onto Count III. However, because the post-conviction court addressed this claim and ordered Bohannon's sentence corrected, we

cannot find any prejudice in counsel's failure to raise the claim on appeal. Accordingly, we conclude that counsel did not provide ineffective assistance by failing to file a timely appeal.[3,4]

## CONCLUSION

Based on the foregoing, we conclude that (1) the post-conviction court did not err in denying Bohannon's claim that his sentence violated state and federal constitutional prohibitions against double jeopardy; (2) the post-conviction court did not err in denying his claim that the State violated I.C. 35-34-1-5(e); and (3) the post-conviction court did not err in finding that Bohannon received the effective assistance of counsel. However, we remand to the trial court to correct Bohannon's sentence in accordance with the post-conviction court's determination that Bohannon's original sentence for Count III was impermissibly enhanced twice.

Affirmed and remanded for correction of sentencing order.

BAILEY, J. and CRONE, J. concur

---

[3] We do note that the trial court erred in correcting Bohannon's sentence. Pursuant to Appellate Rule 65, a trial court may not take action in reliance upon a judicial opinion until it has been certified. In addition, an opinion may not be certified until the time for all petitions, rehearing, transfer, or review has expired. App. R. 65(E). Under App. R. 9(A), a party has thirty days to appeal a final judgment. As a result, the trial court erred in correcting Bohannon's sentence only two days after the post-conviction court ordered the correction. The trial court did not allow Bohannon the opportunity to appeal the post-conviction court's order, and so its resentencing order is void. We remand to the trial court to again correct Bohannon's sentence in line with the post-conviction court's order with respect to the double sentence enhancement of Count III.

[4] In addition, Bohannon also asserts that the trial court erred by adding a double enhancement to his sentence for reckless homicide when it resentenced him following the post-conviction court's order. We will not address this argument as Bohannon has appealed the post-conviction court's order and not the trial court's resentencing order.