## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 08 2020, 8:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Kenny Green
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan M. Comer
Angela Sanchez
Caroline G. Templeton
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Kenny Green,

*Appellant-Petitioner,*

v.

State of Indiana

*Appellee-Respondent.*

May 8, 2020

Court of Appeals Case No.
49A02-1702-PC-494

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge

The Honorable Jeffrey L. Marchal, Magistrate

Trial Court Cause No.
49G06-1010-PC-80292

**Mathias, Judge.**

Kenny Green ("Green") is serving an aggregate forty-year sentence for his Class A felony rape and Class D felony auto theft convictions. The Marion Superior Court denied Kenny Green's pro se petition for post-conviction relief of his rape conviction. Green appeals and argues that he received ineffective assistance of counsel at trial.

We affirm.

## Facts and Procedural History

In 2011, Green was convicted of Class A felony rape and Class D felony auto theft. Green appealed his convictions and sentence, and the facts surrounding his offenses were discussed in his direct appeal:

> On May 18, 2009, P.E. met Green outside her apartment door and invited him inside because she was new to the apartment complex and wanted to meet other residents. P.E. had two other friends with her, and she and Green eventually drove P.E.'s friends to a nearby club. After P.E. and Green returned to P.E.'s apartment, they smoked crack cocaine. Green then left P.E.'s apartment but told her that he would be back.
>
> Hours later, Green returned and asked P.E. if he could use her phone. As P.E. began to retrieve her phone from her purse, Green came up behind her and began to strangle her with a belt from her robe. After he threatened to cut her, Green forced P.E. to perform oral sex on him. Green then gagged P.E. with an electrical cord, pulled off her clothing, and raped her.
>
> After raping P.E., Green took her car keys and cell phone from her purse. Green left P.E.'s apartment, and P.E. put on clothing and chased after him, but once outside, she saw Green driving

away in her car. P.E. then called 911 to report the rape and auto theft. P.E. told the responding officer that a man named K.G. had raped her and stolen her car. The officer observed that P.E. had red marks on the outside of her lips that extended down to her chin, red marks on her neck, an abrasion on her elbow, and bruising on her arms.

The officer sent P.E. to Methodist Hospital for a sexual assault examination. The forensic nurse examiner also observed the red marks near P.E.'s mouth, chin and neck, which she concluded were consistent with "marks made by strangulation by ligature." The nurse examiner also observed injuries and abrasions to P.E.'s vagina, which were consistent with "blunt force trauma" and in the area of the vagina that is typically injured during a sexual assault.

On October 19, 2010, Green was charged with Class A felony rape, Class A felony criminal deviate conduct, Class B felony robbery, Class D felony strangulation, Class D felony criminal confinement, and Class D felony auto theft. After a two-day jury trial, Green was found guilty of rape, strangulation, criminal confinement, and auto theft, but was acquitted of criminal deviate conduct and robbery.

Green's sentencing hearing was held on June 16, 2011. Although Green's counsel did not argue for any mitigating circumstances, the trial court considered Green's substance abuse as a mitigating factor. But the trial court determined that Green's criminal history, consisting of several misdemeanor and felony convictions as well as probation revocations, outweighed that mitigating circumstance. The court then ordered Green to serve concurrent sentences of forty years for Class A felony rape and three years for Class D felony auto theft. The trial court declined to enter judgment on the strangulation and criminal confinement counts due to double jeopardy concerns. Green was also ordered

to register as a sex offender and found to be a sexually violent predator.

*Green v. State*, 49A02-1107-CR-611, 2012 WL 986646 at *1 (Ind. Ct. App. Mar. 22, 2012) (record citations omitted), *trans. denied*.

[4] In 2012, Green filed a pro se petition for post-conviction relief, and he filed an amended petition in 2014. In his amended petition, he challenged the effectiveness of both his trial and appellate counsel. Bifurcated hearings were held on Green's petition on November 19, 2015, and February 4, 2016. During the hearings, Green elicited testimony from his trial counsel concerning the victim's inconsistent statements prior to trial and counsel's advice regarding a guilty plea offer. The trial court concluded that Green's trial counsel and appellate counsel were not ineffective and issued an order denying Green's petition for post-conviction relief on January 24, 2017.[1] Green now appeals pro se challenging only the trial court's conclusion that his trial counsel was not ineffective.

## Standard of Review

[5] Our standard of review for claims of post-conviction court error is well settled:

---

[1] Green's appeal was initially dismissed by our court on October 4, 2017, because the transcript of the post-conviction hearing had not been filed, and Green had not filed a motion to compel the issuance of the Notice of Completion of Transcript within the time limits established by our appellate rules. One year later, our supreme court allowed Green to belatedly file a petition to transfer. On November 13, 2018, the court granted Green's petition to transfer. In its order, the supreme court remanded Green's appeal to our court with instructions to vacate our order of dismissal and to establish a briefing schedule for review of the appeal on its merits.

A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision.

*Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014) (citations omitted) *trans. denied*.

## Discussion and Decision

[6]     "The criminal defendant's right to counsel is foundational to our criminal justice system, giving it legitimacy and fairness." *Bobadilla v. State*, 117 N.E.3d 1272, 1279 (Ind. 2019). "The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel and mandates 'that 'the right to counsel is the right to the effective assistance of counsel.''" *Id.*

(quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[7] A claim of ineffective assistance of trial counsel requires a showing that: (1) Green's trial counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) that the deficient performance prejudiced Green such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. Failure to satisfy either of the two elements will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). It is well-settled that "[i]solated mistakes, poor strategy, or bad tactics do not necessarily amount to ineffective assistance of counsel." *Herrera v. State*, 679 N.E.2d 1322, 1326 (Ind. 1997) (citations omitted).

[8] If it is easier to dispose of an ineffectiveness claim on the lack of prejudice, then this is the course we should follow. *Trujillo v. State*, 962 N.E.2d 110, 114 (Ind. Ct. App. 2011); *Armstrong v. State*, 932 N.E.2d 1263, 1268 (Ind. Ct. App. 2010). Prejudice occurs when a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013).

[9] Green raises several challenges to his trial counsel's effectiveness. The fundamental issue during Green's trial was whether the victim consented to sexual intercourse with Green. The bulk of Green's arguments concerning his

trial counsel's ineffectiveness revolve around counsel's unsuccessful attempts to undermine the victim's credibility.

[10] First, we address Green's argument that his trial counsel was ineffective for failing to impeach the victim with her prior inconsistent statements. Trial counsel was aware of the victim's prior inconsistent statements, and during cross-examination, counsel questioned her about inconsistent statements she made to law enforcement. *See* Trial Tr. Vol. 1 pp. 192–207. During closing arguments, Green's trial counsel relied on the victim's inconsistent statements to attack her credibility in his defense of Green. Trial Tr. Vol. 2, pp. 301–05.

[11] But trial counsel did not question the victim about inconsistencies between a pre-trial audiotaped statement and her trial testimony. These prior inconsistent statements that Green specifically addresses in his brief are minor, such as the victim's confusion of the precise date of the offense.

[12] Despite his efforts to impeach the victim, trial counsel found her testimony credible. P-C.R. Tr. pp. 28–29. Importantly, her trial testimony was corroborated by physical evidence found at the scene, by evidence of injuries suffered that were consistent with her version of the offense, and by the forensic nurse examiner's testimony.

[13] Green also claims that trial counsel should have impeached the victim with a prior rape allegation she made against another individual. The State filed a motion in limine concerning the prior rape allegation. Trial counsel did not object to the motion because there was no proper basis for doing so. Evidence

concerning prior rape allegations is prohibited by Evidence Rule 412 and Indiana Code section 35-37-4-4. Green asserts that the prior rape allegation was false, but there is no evidence to support that claim.[2] The allegation did not result in criminal charges against the accused, but that does not affirmatively establish that the victim made a false accusation. Therefore, counsel was not ineffective for failing to impeach the victim with the prior rape allegation.

[14]     "The method of impeaching witnesses is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance." *Kubsch v. State*, 934 N.E.2d 1138, 1151 (Ind. 2010); *see also McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (quotation and citation omitted) ("Few points of law are as clearly established as the principle that tactical or strategic decisions will not support a claim of ineffective assistance."). Trial counsel attempted to impeach the victim and cast doubt on her credibility by questioning her about her prior inconsistent statements. Counsel did not question the victim about each prior inconsistent statement known to counsel. It was within counsel's discretion to consider the effect of putting each minor prior inconsistent statement before the jury, especially given the strength of the evidence that corroborated the victim's account of the rape.

---

[2] A prior accusation of rape is admissible if (1) the victim has admitted that her prior accusation of rape is false; or (2) the victim's prior accusation is demonstrably false. *Graham v. State*, 736 N.E.2d 822, 825 (Ind. Ct. App. 2000), *trans. denied*. "Prior accusations are demonstrably false where the victim has admitted the falsity of the charges or they have been disproved." *Candler v. State*, 837 N.E.2d 1100, 1103 (Ind. Ct. App. 2005).

For all of these reasons, Green has not established that he was prejudiced by trial counsel's failure to impeach the victim with her prior inconsistent statements or her prior rape allegation.

Next, Green argues that his trial counsel was ineffective for failing to communicate and consult with him. He complains that trial counsel only visited with him twice for less than forty minutes before his jury trial began, and that counsel failed to investigate impeachment evidence. Green claims that if trial counsel had spent more time communicating with him, counsel would have had a better understanding of Green's version of the events and had more evidence to impeach the victim's credibility. Appellant's Br. at 20.

Specifically, Green contends counsel should have consulted with him on his claim that the victim lied when she testified that she did not buy the cocaine that she and Green smoked together. He asserts that if counsel had spent more time communicating with him prior to trial, they could have discussed and investigated evidence that would have undermined the victim's credibility, such as obtaining the surveillance video from the bank machine where the victim withdrew money on the night of the offense.

There is no evidence to support Green's claim that trial counsel failed to adequately communicate with him, but even if there was, Green has not established that the outcome of his trial would have been different if the jury had heard evidence that the victim lied about purchasing the cocaine. The

victim admitted that she and Green smoked cocaine together before Green returned to her apartment and raped her.

[19] At the post-conviction hearing, trial counsel testified that he recalled meeting with Green to discuss the case and potential defenses, and he either played the victim's audiotaped statement for Green or discussed the statement with him. P-C.-R. Tr. pp. 25–26. Green's claim that if counsel had spent more time consulting with him there would have been "more evidence to impeach" the victim is not supported by any evidence. *See* Appellant's Br. at 20. For all of these reasons, Green has not established that his trial counsel was ineffective for failing to adequately communicate and consult with him.

[20] Third, Green argues that his trial counsel was ineffective for failing to provide him with copies of discovery prior to trial, including police reports, pictures and depositions. Trial counsel believed that Green had been provided discovery in the case by his first public defender. At the PCR hearing, counsel also testified that he generally did not provide defendants with discovery so that other inmates at the jail would not have access to the documents. P-C.R. Tr. pp. 8–9. Trial counsel stated that he did not recall Green requesting discovery from him, but that he would have provided copies of the documents if asked. *Id*. Even assuming Green requested discovery he did not receive, Green has not argued how counsel's failure to provide discovery affected the outcome of his trial. Therefore, Green has not established that he was prejudiced because trial counsel did not provide him with copies of discovery.

[21] Fourth, Green contends that his trial counsel misadvised him during plea negotiations. Shortly before Green's trial began, the State offered Green a plea agreement whereby Green would plead guilty to Class D felony sexual battery and Class D felony auto theft with concurrent sentences of three years for each conviction. The trial court advised Green that if he accepted the State's offer, he would have 328 days remaining to serve in jail. The trial court asked if Green would like to consult with his trial counsel, and Green stated he did not need additional time and rejected the State's offer. Trial Tr. pp. 350–51.

[22] Green has not established that he received faulty advice during the plea negotiations. Green argues that he took counsel's advice and rejected the plea offer and he references counsel's "erroneous" advice. Appellant's Br. at 25. But he has not offered any evidence establishing what counsel's advice was aside from his own self-serving testimony at the post-conviction hearing, which the post-conviction court found was not credible. Appellant's App. p. 20. And he rejected the State's final plea offer after stating that he did not need to consult with his counsel. Trial Tr. pp. 350–51. For these reasons, we conclude that Green's trial counsel was not ineffective for advising Green during plea negotiations with the State.

[23] Finally, Green claims that trial counsel's cumulative errors prejudiced him and subjected him to ineffective assistance of trial counsel. Green has not established that his trial counsel was ineffective, and therefore, he has not established that he is entitled to relief based on the cumulative effect of trial counsel's alleged errors.

# Conclusion

[24] Green has not established that he received ineffective assistance of counsel at trial. We therefore affirm the trial court's order denying his petition for post-conviction relief.

[25] Affirmed.

Kirsch, J., and Bailey, J., concur.